# CASE NO. 24-5148

---

## IN THE 10TH CIRCUIT COURT OF APPEALS
## DENVER, COLORADO

---

ROBERT McINTYRE, M.D.
Appellant

*versus*

UNITED STATES INDIAN HEALTH SERVICES and
VISTA STAFFING SOLUTIONS, INC.,
Appellees

---

# CORRECTED APPELLANT'S BRIEF IN CHIEF

---

Appeal from the United States District Court for the Northern District of
Oklahoma, Honorable John D. Russell, United States District Judge,
Original Case Number 23-cv-00421-CDL

---

DANIEL J. GAMINO, OBA 3257
Jamestown Office Park, North Building
3035 NW 63rd Street, Suite 214
Oklahoma City, OK 73116
Telephone: (405) 840-3741
Facsimile: (405) 840-3744
Email: danieljgaminopc@gmail.com
*Attorney for Appellant*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**PAGE**

| | |
|---|---|
| **Table of Authorities** | **i** |
| **Jurisdictional Statement** | **1** |
| **Issues Presented for Review** | **1** |
| **Standard of Review** | **4** |
| **Statement of the Case** | **5** |
| **Summary of Appellant's Argument** | **11** |
| **Proposition I**<br>*Plaintiff Lawfully Pled Subject Matter Jurisdiction to the Court Below* | **11** |
| **Proposition II**<br>*Dr. McIntyre Exhausted all IHS Administrative Remedies Before Seeking Judicial Relief* | **19** |
| **Proposition III**<br>*Vista Staffing Solutions, Inc. Violated Covenant of Good Faith and Fair Dealing in Summarily Canceling Dr. McIntyre's Contract* | **20** |
| **Proposition IV**<br>*The Implied Covenant of Good Faith and Fair Dealing in This Case Requires Vista Staffing Solutions, Inc. to Conduct Some Inquiry, Investigation, Fact Finding or Due Diligence* | **26** |
| **Conclusion and Relief Sought** | **28** |
| **Request for Oral Argument** | **28** |

i

| Certificate of Service | 30 |
|---|---|
| Certificate of Compliance | 31 |
| Attachment 1 District Court Opinion and Order Filed 11-21-2024 | 32 |
| Attachment 2 District Court Opinion and Order Filed 11-22-2024 | 38 |
| Attachment 3 District Court Judgment Filed 11-22-2024 | 42 |

# TABLE OF AUTHORITIES

## CASES:

| | |
|---|---|
| *Berube v. Fashion Center, Ltd.*, 771 P.2d 1033, 1044-45 (Utah, 1989) | 22 |
| *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991) | 20, 23 |
| *Gregg v. Harper-Turner Oil Company*, 199 F.2d 1 (10th Cir. 1952) | 26 |
| *Leigh Furniture and Carpet Company v. Isom*, 657 P.2d 293, 311 (Utah, 1982) | 23 |
| *Manion v. Spectrum Health Care Resources*, 966 F.Supp.2d 561 (E.D.N.C. 2013) | 14 |
| *McGuire v. US*, 550 F.3d 903 (9th Cir. 2008) | 12 |
| *Moore v. University of Kansas*, 118 F.Supp.3d 1242 (D. Kan. 2015) | 13 |
| *Newell v. Phillips Petroleum Company*, 144 F.2d 338 (10th Cir. 1944) | 27 |
| *Olympus Hill Center, Ltd. v. Smith's Food*, 889 P.2d 445 (Utah, CT. APP. 1994) | 23 |
| *Pohlemann v. Stephens Petroleum Company*, 197 F.2d 134 (10th Cir. 1952) | 26 |
| *Regal Real Source, LLC v. Enlaw, LLC* 554 P.3d 1112, 1127 (Utah Ct. APP. 2024) | 20 |
| *Resource Management Company v. Weston Ranch and Livestock Company*, 706 P.2d 1028, 1037 (Utah, 1985) | 23 |
| *St. Benedicts Development Company v. St. Benedicts Hospital*, 811 P.2d 194 (Utah, 1991) | 23 |

| | |
|---|---|
| _**Son-Lin Farms, Inc. v. Dyco Petroleum Corp**_, 589 F.Supp.1 (D.C. Okl. 1982) | 27 |
| _**Ted R. Brown and Associates, Inc. v. Carnes Corp.**_, 753 P.2d 964, 970 (Utah, APP. 1988) | 23 |
| _**Trust Company of Chicago v. Samedan Oil Corp.**_, 192 F.2d 282 (10th Cir. 1952) | 27 |
| _**US v. Weber**_, No. 18-14-FG-B;NM (D. Mont.) | 8 |
| _**U.S. v. Weber**_, No. CR-17-50033 (D. S.D.). | 8 |
| _**Village West Associates v. Rhode Island Housing and Mortgage Finance Corp**_, 618 F.Supp.2d 134 (D.R.I. 2009) | 12 |
| _**Wood v. Utah Farm Bureau Insurance Company**_v, 19 P.3d 392 (2001 UT APP. 35) | 24 |
| _**Wren v. MSPB**_, 681 F.2d 867, 22 U.S. APP D.C. 352 (1982) | 14 |

**STATUTES:**

| | |
|---|---|
| **5 U.S.C. §2302** | 1 |
| **5 U.S.C. §2302(b)(8)** | 13 |
| **10 U.S.C. §2409** | 1 |
| **18 U.S.C. §242** | 11, 15 |
| **25 U.S.C. §11.448** | 11, 15 |
| **28 U.S.C. §1331** | 1 |
| **28 U.S.C. §1337** | 1 |

| | |
|---|---|
| **28 U.S.C. §1344** | **1** |
| **28 U.S.C. §1491(b)(1)** | **1** |
| **41 U.S.C. §4712** | **1, 19** |
| **41 U.S.C. §4712(a)(1)** | **1, 12, 13** |
| **41 U.S.C. §4712(c)(1)** | **19** |
| **41 U.S.C. §4712(c)(2)** | **19** |

## 10th Circuit Rule 28(C)(1) Notation

There are no prior or related appeals to this cause.

## JURISDICTIONAL STATEMENT

A.     The Court below possesses subject matter jurisdiction pursuant to legal authority of 28 U.S.C. §1331, §1337, §1344 and §1491(b)(1) and 41 U.S.C. §4712(a)(1), 5 U.S.C. §2302, and 10 U.S.C. §2409.

B.     This honorable 10th Circuit Court possesses jurisdiction of this cause pursuant to legal authority of Rules 3 and 4, Rules of Appellate Procedure.  The appeal was timely filed pursuant to Federal Rules of Civil Procedure, Rule 4(a)(1)(B).

C.     On March 11, 2024, the Court below handed down its Opinion, Order and Judgements granting the respective Defendants' Motions to Dismiss.

On December 31, 2024, the Docketing Statement was filed herein (DOC 3) and costs paid by the Appellant.

On January 17, 2025, the Mediation conference was held by the 10th Circuit staff.  The mediation was not successful.

On February 13, 2025, Appellant's Brief in Chief was mailed herein.

D.     This appeal is from Final Orders and Judgments that dispose of all parties' claims.

## ISSUES PRESENTED FOR REVIEW

1.     Parties to a contract have an implied duty of good faith and fair dealing.

1

2.     The implied covenant of good faith and fair dealing in this case was violated by Vista Staffing Solutions, Inc., because Dr. Robert F. McIntyre informed the company, he was fired by the Indian Health Services (IHS) Chinle Comprehensive Healthcare Hospital for:

A.     Reporting an IHS administrative sexual misconduct cover up in pharmacy.

B.     Reporting the lack of informed consent to Elder Tribal Members that the Covid-19 vaccine was made from aborted fetal stem cell lines.  Navajo Tribal Elders have well known taboos about "dead babies."  Many elders developed psychiatric disorders because their bodies were "corrupted."  Expensive ceremonies by Medicine Men were performed.  Other elders developed generalized anxiety disorder, panic attacks, depression, or committed suicide.

Indian Health Services has a long dark history of intentionally withholding true information consent to Native Americans.  The Office of Inspector General (OIG) reported that between the years, 1973 to 1976, 4,036 whole blooded Native females were sterilized without their informed consent.  The youngest sterilized was 11 years old.  It took three Federal Court actions before IHS would cease and desist from this illegal activity.  The whole blooded Native females sterilized thought they were having a different procedure done.  To this very day, Native American women, "do not trust" the IHS departments of obstetrics and gynecology.

2

C.     The common practice of letting homicidal and suicidal persons leave the Emergency Room because Chinle IHS risk management informed Dr. McIntyre that "Once off the federal compound, 'It' (suicide or homicide) was no longer our problem."

Dr. McIntyre was told to "never contact Vista Staffing Solutions again" by their upper management.

Dr. McIntyre informed his Vista Scheduler of his retaliatory firing on October 21, 2021 and Dr. Ritchie's resignation on October 28, 2021.  Dr. McIntyre did not find the true reason of his firing until Vista Staffing's legal counsel disclosed in their filing to the Court on November 18, 2023.

Vista Staffing's unilateral actions made Dr. McIntyre unemployable.  On hiring applications there can be "no gaps in time."  Having to state to new employers that Dr. McIntyre did not "know why he was fired after 10-years did not plat well with hiring authorities at Compass Health or the Truman Veterans Hospital in Columbia, Missouri.  Both companies withdrew their employment offers in January of 2024 and July of 2024.

3.     The Court below lawfully possesses subject matter jurisdiction over this cause.

4.     Dr. McIntyre did exhaust all administrative remedies below.

5.     Defendants' Motions to Dismiss below included misdirection and created unnecessary confusion.

6.     Defendant IHS is attempting to create a multiplicity of suits.

7.     In this case, Dr. McIntyre had no due process of law to get a waiver of governmental sovereignty. The Office of Inspector General (OIG) and Indian Health Services (IHS) failed to grant Dr. McIntyre protected whistleblower status. Dr. McIntyre was an eye witness for 10-years on the Navajo Chinle Reservation. Dr. McIntyre's legal documentation prove his case is not of allegations but one of fact. We seek that the Appellate Court to protect Navajo public safety, where IHS and OIG have failed to do so, OIG and IHS have abrogated the right of sovereign immunity, since they are acting as private corporations devoid of such privilege and public trust.

## <u>STANDARD OF REVIEW</u>

With respect to the Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. 12(b)(6) the Court must observe first that Fed. R. 8(a) merely requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the Plaintiff's claim is and the ground upon which it rests." The Supreme Court has held that "While a complaint attacked by a Rul 12(b)(6) Motion to Dismiss does not need factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, *Bell Atlantic Corp v. Twombly*, 550 US 544, 127 S.Ct. 1955, 167 L.Ed.2d 292 (2007).

To survive a Motion to Dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 US 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  A claim has facial plausibility when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference based on the facts pled.

## STATEMENT OF THE CASE

At all times herein Plaintiff Dr. Robert McIntyre, M.D. was a seasoned, licensed psychiatrist in good standing.  Dr. McIntyre was an independent contractor with Vista Staffing Solutions, Inc. to provide psychiatric medical services and was assigned to the Chinle Comprehensive Health Care Facility on the Chinle Reservation located in Chinle, Arizona.  Previously Dr. McIntyre worked through Vista Staffing Solutions, Inc. for approximately 10-years at Chinle Comprehensive Healthcare Facility without any prior administrative complaints, disciplinary actions, unprofessional conduct, failure to maintain a positive work environment or malpractice lawsuits.

In 2021, there was an active OIG investigation going on at the Chinle, Arizona Reservation regarding missing controlled substances at the Chinle Pharmacy.  When

5

Dr. McIntyre became aware of the administrative coverup of sexual misconduct, and medical malpractice, he had a duty to report the events and he did so report by email to OIG Lauren Hanover on September 16, 2021.

Prior retaliation by Dr. Ritchie to Dr. McIntyre's reporting the administrative sexual misconduct and malpractice coverup, are documented in Dr. McIntyre's September 16, 2021, email to Agent Hanover. Dr. McIntyre was denied an exemption from the Covid-19 mandatory vaccination that was medically supported by his personal physician Dr. Richard Regan on August 13, 2021. Dr. Regan is a triple Board-certified member in the fields of immunology, virology, and hematology. That formal request for exemption was made as required by the Special General Memorandum 20-04 from Elizabeth Fowler, Acting Director, Indian Health Services.

Dr. McIntyre was also denied a reasonable accommodation by Dr. Richie to take a 4-hour basic life support class at the Chinle Comprehensive Health Care Facility (CCHCF), as was the previous custom for many years. However, a rule change not allowing the class to be taken by physician subcontractors occurred at the Navaho Area Office. At that time a federal travel ban was in place and Dr. McIntyre followed the chain of command to obtain a "waiver" based on patient safety and health concerns at his busy clinic without avail.

6

In further retaliation the Chinle Clinic refused to allow Dr. McIntyre to attend a basic life support course held at the Chinle Clinic. Completion of the BLS Class was required by the terms of Dr. McIntyre's contract. Since the Chinle Clinic did not allow Dr. McIntyre to take the BLS Class at the Chinle Clinic then Dr. McIntyre was required to travel more than 200 miles to take the course in Albuquerque, New Mexico or Flagstaff, Arizona. And there was at the time the federal travel ban.

Evidence shows Dr. McIntyre is in law and in fact a genuine whistleblower. As a psychiatrist, Dr. McIntyre personally saw and treated patients with diagnosed suicidal and homicidal traits. Many times, Dr. McIntyre was forced to stand by helpless as those suicidal and homicidal patients were released <u>without medication for their condition</u>. The release of those patients <u>without medication</u> certainly was medical malpractice. The release of suicidal and homicidal <u>without medication</u> placed the patients and the people on the reservation in imminent, life and death peril for their own safety.

Dr. McIntyre was also an eye-witness to IHS failing to obtain informed consent before injecting Navaho Indians with Covid-19 vaccinations that included aborted fetal stem cell stem lines. The Navaho have longstanding taboos about vaccines developed using aborted fetal stem cell stem lines.

Based on his personal, firsthand knowledge of such acts and omissions by IHS, Dr. McIntyre stepped up to protect patient health and safety and blew the

whistle. Dr. McIntyre did not merely report hearsay allegations relayed to him. Dr. McIntyre personally witnessed this premature release of suicidal and homicidal patients without medication and the treatments to Navaho Native Americans without informed consent. Dr. McIntyre blew the whistle based on his own firsthand, eyewitness knowledge and personal experience.

In addition, while practicing at the Chinle Comprehensive Health Care Facility, Dr. McIntyre became aware of former Chief of Pharmacy Walter Lloyd's inappropriate sexual involvement with a subordinate Navajo pharmacy technician. Walter Lloyd was married at the time and threatened physical harm to the subordinate and her family if their relationship became public.

It is now clear why IHS took no action against the sexual predator Mr. Lloyd. In 2019, a documentary was released by the *Wall Street Journal* and FRONTLINE showing an IHS doctor Stanley Patrick Weber, was a pedophile who sexually abused Native American boys for decades at the IHS hospital in Browning, Montana. Instead of confronting and discharging Dr. Weber, the IHS simply transferred him at full salary to an IHS hospital in Pineridge, South Dakota where he worked for another 20-years.

Dr. Weber was later convicted of abusing six victims and sentenced to life in prison (*US v. Weber*, No. 18-14-GF-BNM (D. Mont.), and *US v. Weber*, No. CR-

17-50033 (D. S.D.).  (See also *Seattle University Law Review*, Vol 46, Page 867, et. seq.).

So Dr. McIntyre's whistleblowing was viewed as "Dr. Weber 2.0" by IHS. And IHS was still staggering from the Dr. Weber public scandal and a scathing White House Task Force Investigative Report.  IHS even sought to keep the White House report confidential until the *Wall Street Journal* and the *New York Times* successfully sued for its release under public-record laws.

On October 21, 2021, Vista received a letter from the Chinle Clinic advising that Chinle was terminating Dr. McIntyre.  The only reason offered were vague claims of "lack of professionalism" and "failure to maintain a positive working environment" at the Chinle Clinic.

Pointedly, the letter never claimed that Dr. McIntyre made diagnostic errors on any patient.  Nor was there any claim that Dr. McIntyre made medication prescribing errors, or lacked any clinical skills or failed to chart in a timely manner or any patient or patient family complaints against Dr. McIntyre.  There was no allegation Dr. McIntyre was named in any medical malpractice suit.  Nor was there a claim that Dr. McIntyre was the subject of any attorney demand letter based on any acts or omission with any patient at the Chinle Clinic.  There were no allegation Dr. McIntyre was ever inappropriate in dealing with Chinle Clinic staff, patients, or visitors.  There was no allegation about any chronic tardiness, absenteeism, or any

9

verbal or physical altercation with any Chinle Clinic staff, patient, or visitor by Dr. McIntyre. There was no allegation Dr. McIntyre personally used or abused any controlled dangerous substance, alcohol, or any illegal drug.

Upon receipt of the vague letter from the Chinle Clinic, Vista Staffing Solutions, Inc. conducted no investigation, no inquiry, and no fact finding based on the vague allegations. Indeed, Vista Staffing Solutions, Inc. conducted no due diligence steps of any kind or character regarding the general, unspecified claims suddenly made against Dr. McIntyre.

With no data verification of any nature whatsoever, Vista Staffing Solutions, Inc. simply discarded Dr. McIntyre as a provider. They offered Dr. McIntyre no further assignments. And Vista Staffing Solutions, Inc. never advised Dr. McIntyre of the reasons or allegations that caused his termination. The Vista Staffing Solutions, Inc. unilateral action rendered Dr. McIntyre unemployable. And Dr. McIntyre never knew the basis for the unilateral Vista Staffing Solutions, Inc. action of termination until the Vista Staffing Solutions, Inc. legal counsel disclosed to this Court in the filing of November 18, 2023 (DOC. 19). Dr. McIntyre then learned the basis used for termination. Dr. McIntyre was denied hiring back with CCHCF in March, 2023 and denied a psychiatric position with the Cherokee Nation of Oklahoma in August, 2023.

## SUMMARY OF APPELLANT'S ARGUMENT

Jurisdiction was proper in the Court below.  In this instance the Federal District Court and the US Court of Federal Claims have equal and concurrent jurisdiction.  In addition, Dr. McIntyre was a federal contractor and the Court below had jurisdiction over this matter pursuant to 10 U.S.C. §2409.  And the acts and omissions of the Defendant IHS violated 18 U.S.C. §242, and 25 U.S.C. §11.448.  Also, Dr. McIntyre had protection as a whistleblower.

Dr. McIntyre exhausted all administrative remedies before seeking judicial relief.

The Defendants are attempting to create a needless multiplicity of suits and attempting to confuse the jurisdiction which lies in the Court below.

It is well settled that parties to a contract such as Vista Staffing Solutions, Inc. have an implied duty of good faith and fair dealing and that duty was breached in this case.

## PROPOSITION I

### *PLAINTIFF LAWFULLY PLED SUBJECT MATTER JURISDICTION TO THE COURT BELOW.*

The Opinion and Order of the Court below (DOC. 39) did not cite, discuss, or even acknowledge the key statute that grants it jurisdiction.  Title 28 U.S.C. §1491(b)(1) grants the Court below and the US Court of Federal Claims equal and

11

concurrent jurisdiction over Dr. McIntyre's case.    Title 28 U.S.C. §1491(b)(1)

provides as follow, to-wit:

> "**(b)(1)** Both the United States Court of Federal Claims and the District Courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to. . . . .any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.  Bot the United States Court of Federal Claims and the District Courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded." (Emphasis added).

Case law is consistent with the language of 41 U.S.C. §4712(a)(1), to-wit:

> "The Tucker Act's grant of jurisdiction to the Court of Federal Claims is frequently referred to as exclusive, but that Court's jurisdiction is exclusive only to the extent that congress has not granted any other Court authority to hear the claims that may be decided by the Claims Court." *McGuire v. US*, 550 F.3d 903 (9th Cir. 2008). (Emphasis added).

> "While the Tucker Act provides the most common path for a suit against the United States involving a contract, that path is only exclusive to the extent no other Court has authority to hear the action; in other words, if a District Court has independent grounds upon which to exercise subject matter jurisdiction and a source of waiver of sovereign immunity besides the Tucker Act, that a Plaintiff need not rely on the Tucker Act avenue in the claims Court to sue the United States." *Village West Associates v. Rhode Island Housing and Mortgage Finance Corp*, 618 F.Supp.2d 134 (D.R.I. 2009). (Emphasis added).

Under this legal authority of jurisdiction, the Defendant IHS is lawfully

named as a party Defendant and the Court below had concurrent jurisdiction to

proceed forth herein.

The record shows the Defendant United States Indian Health Service and the Defendant Vista Staffing Solutions, Inc. both violated statues pled in the Complaint. Those statutes deal directly with the procurement of Dr. McIntyre's contract with Vista and in turn Vista's contract with IHS.

The relevant statutes include the following, to-wit:

**41 U.S.C. §4712(a)(1)**.

That Act provides in pertinent part as follows, to-wit:

"(1) **In general**--An employee of a contractor, subcontractor, or grantee may not be discharged, demoted or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) <u>information that the employee reasonably believes is evidence of gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health or safety</u>, or a violation of law, rule or regulation related to a federal contract (including the competition for or negotiation of a contract) or grant." See also *Moore v. University of Kansas*, 118 F.Supp.3d 1242 (D.Kan. 2015). (Emphasis added).

And such retaliatory action against Dr. McIntyre by the Defendant Indian Health Service was also contrary to 5 U.S.C. §2302(b)(8) to-wit:

"Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority--

(8) Take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of--

13

(A) <u>Any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences</u>--

(i) <u>Any violation of law</u>, rule, or regulation, or

(ii) Gross mismanagement, a gross waste of funds, <u>an abuse of authority, or a substantial and specific danger to public health or safety.</u> . . . ." See *Wren v. MSPB*, 681 F.2d 867, 22 U.S. APP D.C. 352 (1982). (Emphasis added).

Such retaliatory action by IHS was also contrary to the provisions of 10 U.S.C.

§2409, to-wit:

"Section 2409.   Contractor employees: Protection from reprisal for disclosure of certain information.

(1) **Prohibition of reprisals**-- (1) An employee of a contractor, may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a . . . an authorized official of an agency . . . relating to a substantial violation of any law related to a contract . . . .

A. Gross mismanagement of a Department of Defense contract or grant, a gross misuse of department funds, an abuse of authority relating to a department contract, grant or a violation of law, rule, or regulation related to a department contract (including the competition for or negotiation of a contract (or a grant))." See *Manion v. Spectrum Health Care Resources*, 966 F.Supp.2d 561 (E.D.N.C. 2013).

Heretofore Plaintiff pled in detail the IHS breach of contract with Vista.  IHS

contracted with Vista Staffing Solutions, Inc. for Vista to provide certain physicians

and medical professionals to IHS for employment at the Chinle Reservation, Chinle,

Arizona (CCHCF), Complaint, ¶31.   Dr. McIntyre was at all times a third-party

beneficiary of the contract between IHS and Vista Staffing Solutions, Inc.

IHS breached its contract with Vista Staffing Solutions, Inc. to the detriment of third-party beneficiary Dr. McIntyre when it failed to contemporaneously "reasonably find the performance of professional to be unacceptable for reasons of professional competence or personal conduct," (Section 4, Vista Staffing Solutions, Inc., Contract dated January 13, 2021).

And the IHS never produced any contemporaneous evidence to Vista Staffing Solutions, Inc. of any of the required unacceptable "professional competence or personal conduct" as required to be provided to Dr. McIntyre and to Vista.

And IHS failed to contemporaneously disclose to Vista the IHS retaliatory discharge and removal action against Dr. McIntyre that occurred in October, 2021 based on Dr. McIntyre's protected actions at whistleblowing against the IHS that began in September and early October, 2021.

The IHS acts and omissions also violated 18 U.S.C. §242, to-wit:

"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any state, territory, commonwealth, possession, or district to the deprivation of any rights, privileges or immunities secured or protected by the Constitution or laws of the United States . . . . . "

And the IHS acts and omissions against Dr. McIntyre also violated 25 U.S.C. §11.448, to-wit:

"Abuse of office.

15

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor if, knowing that his or her conduct is illegal, he or she:

(a) Subjects another to arrest, detention, search, seizure, <u>mistreatment, dispossession, assessment, lien or other infringement of a personal or property rights</u> or

(b) Denies or impedes another <u>in the exercise or enjoyment of any right, privilege, power or immunity</u>." (Emphasis added).

And IHS further violated the aforesaid contract with Vista Staffing Solutions, Inc. by exercising control relating to the manner in which or means by which Dr. McIntyre performed professional medical services or how Dr. McIntyre reached decisions in the practice of medicine (Section 11, Vista Staffing Solutions, Inc. Contract dated January 13, 2021).

All of those respective statutes grant jurisdiction to the Court below to hear the Plaintiff's claims. Those statutes grant the Court below independent grounds upon which to exercise subject matter jurisdiction and constitute a source of waiver of sovereign immunity besides the Tucker Act. As pled in the Complaint Dr. McIntyre is a bonafide whistleblower when in the course of his employment Dr. McIntyre personally became aware of unlawful activities concerning a pharmacist Walter Lloyd who was providing pharmacy services at the Chinle Arizona Reservation. When Dr. McIntyre uncovered those unlawful actions of a sexual misconduct coverup by the Clinical Director Eric Ritchie, M.D. and Assistant

Medical Director Andrew Baker, M.D. then Dr. McIntyre had a duty to report per the American Medical Association's and American Psychiatric Association's ethical guidelines. Dr. McIntyre then notified OIG Agent Mr. Hanover promptly, who happened to be onsite at Chinle investigating reports of missing controlled substances at the Chinle Pharmacy. IHS leaders already had ignored Dr. McIntyre's previous concerns for patient health and public safety, specifically regarding suicidal and homicidal patients being allowed to "walk out of the hospital emergency room or elope from the Adult Inpatient Unit." Other specific protected disclosures of public health and patient safety issues not addressed by the OIG letter of March 8, 2022 of Dr. McIntyre were the "lack of informed consent" regarding full medical disclosure to the Navaho during the Covid-19 pandemic, as well as, the denial of a "compassionate medical waiver" of the Covid vaccine from Dr. Richard Regan addressed to Dr. Ritchie for Dr. McIntyre This denial is in violation of Special General Memorandum (SGM 21-04) and abuse of office.

Dr. McIntyre also blew the whistle by his follow up email of October 13, 2021, 8:38 a.m. to OIG Investigator Lauren Hanover again bringing facts and evidence to Mr. Hanover's attention against the pharmacist and that also constituted a whistleblowing on Dr. Ritchie and Dr. Baker who failed to take curative action. And eight-days later, in clear retaliation, Dr. McIntyre was terminated orally by Dr. Ritchie who delegated that termination be communicated to the Plaintiff. Such overt

17

breach of contract and failure to accord Dr. McIntyre whistleblower protection is well pled in the case at bar. The aforesaid statutes create a network of protection for Dr. McIntyre as a whistleblower. Yet Dr. Ritchie and the IHS failed to cite a single incident of professional incompetence or personal conduct by Dr. McIntyre to the Defendant Vista Staffing Solutions, Inc. or in the alternative to prove the information Dr. McIntyre provided to Defendant Vista Staffing Solutions, Inc. was demonstrably false and untrue.

By contract Vista Staffing Solutions, Inc. had a duty of good faith and fair dealing to Dr. McIntyre to inquire into any allegations of professional competence or personal conduct transmitted by any client to ascertain if there was a bonafide, reasonable basis for sudden ending of a placement in a summary fashion. Yet Defendant Vista Staffing Solutions, Inc. failed and neglected to ascertain that the base conclusory information forwarded by Dr. Ritchie was accurate, true or reliable. The abject failure by Vista Staffing Solutions, Inc. to investigate as required by contract the allegations provided by Dr. Ritchie on behalf of the Defendant IHS was a direct breach of its own contract.

In the IHS Motion to Dismiss filed below, considerable time was spent denigrating the plain language of a series of federal statutes and one federal regulation that demonstrate the IHS breach of contract wherein Dr. McIntyre was a third-party beneficiary.

## PROPOSITION II

### *DR. McINTYRE EXHAUSTED ALL IHS ADMINISTRATIVE REMEDIES BEFORE SEEKING JUDICIAL RELIEF.*

Dr. McIntyre heretofore pled that on October 23, 2021 the DHHS Office of Inspector General received his complaint of reprisal filed under legal authority of 41 U.S.C. §4712. And on March 8, 2022, the DHHS Office of Inspector General closed its file on Dr. McIntyre's complaint with no action taken.

Thereafter, within 30-days of receiving the IG report the head of the executive agency concerned (IHS) failed to determine whether there was sufficient basis to conclude that the contractor or grantee concerned had subjected Dr. McIntyre to a prohibited reprisal. And the head of the executive agency (IHS) failed to issue an order denying relief or taking other action as required by 41 U.S.C. §4712(c)(1).

Herein the head of the executive agency (IHS) did not issue any order either granting or denying relief to Dr. McIntyre.

Under these circumstance, Dr. McIntyre did as a matter of fact and as a matter of law exhausted administrative remedies with respect to the complaint and Dr. McIntyre may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under §4712 in the appropriate District Court of the United States which shall have jurisdiction over such action without regard to the amount in controversy. (41 U.S.C. §4712(c)(2)).

## PROPOSITION III

### *VISTA STAFFING SOLUTIONS, INC. VIOLATED COVENANT OF GOOD FAITH AND FAIR DEALING IN SUMMARILY CANCELING DR. McINTYRE'S CONTRACT.*

In the Opinion and Order of the Court below (DOC. 38) filed on November 21, 2024 the lower Court did recognize that the applicable law on the contract at issue contained an implied covenant of good faith and fair dealing, to-wit:

> "Dr. McIntyre is correct that, under Utah law, every contract is subject to an implied covenant of good faith and fair dealing. See *Regal Real Source, LLC v. Enlaw, LLC*, 554 P.3d 1112, 1127 (Utah CT. APP. 2024), cert. denied No. 20240967, 2024 W.L. 4686063 (Utah, October 10, 2024)." (DOC. 38, Page 4).

The Court below also noted that duties and rights created by the contract should be exercised in good faith, to-wit:

> "But this implied duty simply requires that a contract 'be construed in a manner which assumes the parties intended that the duties and rights created by the contract should be exercised in good faith.' *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991)."

The Court below reasoned that "it would be improper for the Court to place a substantial limitation on that right placed on the implied covenant of good faith and fair dealing." The Court below strictly read the Placement Agreement drafted by Vista Staffing Solutions, Inc. The Court below ignored the overall tenor of the contract and the requirement that the entire contract was subject to an implied covenant of good faith and fair dealing. The Court below stated it would not rewrite the contract between Dr. McIntyre and Vista Staffing Solutions, Inc.

But the Court below read more into Dr. McIntyre's case than was present. Dr. McIntyre did not ask that the contract be rewritten. Dr. McIntyre did not ask for a new contract. Dr. McIntyre simply pled that the entire contract should be construed under the Utah law that held every contract as subject to an implied covenant of good faith and fair dealing.

In the case at bar, Dr. McIntyre had served under various contracts with Vista Staffing Solutions, Inc. for a period in excess of 10-years. Dr. McIntyre had achieved an excellent work record and work performance. As noted above, the letter of termination from Chinle Clinic never claimed Dr. McIntyre made diagnostic errors on any patient or prescribing errors or that he lacked any clinical skills or failed to chart in a timely manner or there were patient, patient family complaints against Dr. McIntyre. There is no evidence Dr. McIntyre was named in any medical malpractice suit at the Chinle Clinic. Nor any evidence Dr. McIntyre was the subject of any attorney demand letter based on any acts or omissions with any patients at the Chinle Clinic. Nor was there any allegation that Dr. McIntyre's inappropriate conduct in dealing with Chinle Clinic staff, patients or visitors. And there were no allegations about any chronic tardiness, absenteeism or any verbal or physical altercation by Dr. McIntyre with any Chinle Clinic staff, patient or visitor. Nor were there any allegations Dr. McIntyre personally used or abused any CDS, alcohol or illegal drugs.

The letter from the Chinle Clinic only offered vague, general allegations of "lack of professionalism" and "failure to maintain a positive working environment" at the Chinle Clinic.  The Chinle Clinic letter did not include any attachments or exhibits or sample patient charts or any evidence of any kind to support those vague allegations.  The Chinle Clinic letter was not accompanied with any affidavits of patient or staff making any derogatory claims against Dr. McIntyre.

In Dr. McIntyre working under that contract for more than 10-years, the so-called termination notice about Dr. McIntyre did not fulfill the condition precedent required by ¶4 of the contract.

When faced with this non-sequitur from the Chinle Clinic, Vista Staffing Solutions, Inc. had a good faith duty to investigate to a reasonably degree the factual basis for conclusions included in the termination notice.  Yet, Vista Staffing Solutions, Inc. undertook no inquiry, no investigation, no fact finding, and no due diligence regarding alleged unprofessional performance of Dr. McIntyre.  And in 10-years, this was the first time such allegations were ever raised against Dr. McIntyre.

Utah law is well settled that an employment contract is subject to an implied covenant of good faith and fair dealing, to-wit:

> "After _Rose_, this Court modified the at will doctrine as it had been applied.  _Berube v. Fashion Center, Ltd._, 771 P.2d 1033, 1044-45 (Utah, 1989), held that the presumption of an at will discharge right created by an indefinite term employment agreement could be modified

22

by implied in fact contract terms found in an employment manual and that employee's continued performance of services could be adequate consideration for those terms. . . . .Third, a few states have held that an indefinite-term employment contract is subject to an implied in law covenant of good faith and fair dealing that make an employer liable for a bad faith discharge." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49 (Utah, 1991). (Emphasis added).

"Smith's argument poses the question of whether parties who retain express power or discretion under a contract can exercise that power or discretion in <u>such a way as to breach the covenant of good faith and fair dealing</u>. <u>We believe that they can</u>.  Our courts have determined that a party must exercise express rights awarded under a contract reasonably and in good faith.  See *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah, 1991). . . . .*Resource Management Company v. Weston Ranch and Livestock Company*, 706 P.2d 1028, 1037 (Utah, 1985) (Party must exercise rights under contract reasonably and in good faith); *Leigh Furniture and Carpet Company v. Isom*, 657 P.2d 293, 311 (Utah, 1982) (Party has duty to exercise all rights under contract reasonably and in good faith); *Ted R. Brown and Associates, Inc. v. Carnes Corp.*, 753 P.2d 964, 970 (Utah, APP. 1988) (Party must exercise express rights in good faith).

It is fundamental that every contract includes a covenant of good faith and fair dealing with respect to dealings between the parties, *St. Benedicts Development Company v. St. Benedicts Hospital*, 811 P.2d 194, 199 (Utah, 1991)." *Olympus Hill Center, Ltd. v. Smith's Food*, 889 P.2d 445 (Utah, CT. APP. 1994).

"<u>Parties to a contract must exercise their contractual rights in good faith</u>.  See *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah, 1991).  Good faith and fair dealing mean the parties must be faithful to the 'agreed common purpose' and consistent with 'the justified expectations of the other party.' *Olympus Hills Shopping Center, Ltd. v. Smith's Food and Drug Centers, Inc.*, 889 P.2d 445, 451 (Utah CT. APP. 1994) (Quoting restatement (second) of contract section 205

CMT.a (1979)).” *Wood v. Utah Farm Bureau Insurance Company*, 19 P.3d 392 (2001 UT APP. 35).  (Emphasis added).

Vista Staffing Solutions, Inc.’s utter failure to even attempt to inquire, to investigate, to fact find or to exercise due diligence renders them liable for that failure to act in good faith and to deal fairly with Dr. McIntyre.

Paragraph 23 of the Professional Services Placement Agreement provides in pertinent part “the Company (Vista) may terminate the Agreement and assign all placement of professional (Dr. McIntyre). . . . .(at) the request of a client (Chinle Clinic) that physician be removed for any reason.”  (Emphasis added).

Such a unilateral grant of authority to the client (Chinle Clinic) is contrary on its face to the implied covenant of good faith and fair dealing.  The entire purpose of the Professional Services Placement Agreement is for Vista Staffing to provide necessary stability to both the professional (Dr. McIntyre) and the client (Chinle Clinic).  The unilateral language of ¶23 cited above is directly contrary to such stability.

Such unilateral language is dangerous to any professional, including in this case Dr. McIntyre.  As a physician, Dr. McIntyre is a recognized member of the healing arts.  Dr. McIntyre’s professional competence and clinical skills are conformed by his professional licenses from four (4) different states.  Any unprofessional conduct proven by a licensing authority is reported directly to the National Practitioner Data Bank.  In turn the NPDB serves as a clearing house and

makes such state disciplinary action available to all sister jurisdictions. Dr. McIntyre's professional life is subject to oversight by all state medical boards where he holds licensure or where he may apply for licensure in the future.

Any sudden "termination" of Dr. Mcintyre as an independent contractor physician creates an immediate cloud over Dr. McIntyre's clinical competence and his personal behavior. Since Vista Staffing Solutions, Inc. for 12-years sent Dr. McIntyre out as a locum tenens physician then Vista Staffing Solutions, Inc. has a direct stake in Dr. McIntyre's competence and personal conduct and the safety of patients entrusted to his care. That relationship implies a covenant in the Professional Services Placement Agreement that Vista would investigate the "any reason" offered by the client (Chinle Clinic) to remove Dr. McIntyre. Ultimately it is Vista Staffing Solutions, Inc. that dispatched Dr. McIntyre to treat patients and Vista Staffing Solutions, Inc. retains the duty to ensure that Dr. McIntyre acts in a professional manner at all times.

Yet Vista Staffing Solutions, Inc. did not undertake any inquiry, any investigation, any fact finding, or exercise any due diligence when confronted by the conclusory allegations made by the Chinle Clinic.

Vista Staffing Solutions, Inc. violated the implied covenant of good faith and fair dealing it owed to Dr. McIntyre.

## PROPOSITION IV

### *THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IN THIS CASE REQUIRES VISTA STAFFING SOLUTIONS, INC. TO CONDUCT SOME INQUIRY, INVESTIGATION, FACT FINDING OR DUE DILIGENCE.*

Defendant Vista's examination in the Motion to Dismiss is limited to the specific, black letter language of the Professional Services Placement Agreement. As such, the examination is incomplete. In addition to the express terms of any contract, a contract also carries implied covenants and obligations. A common example is in oil and gas leasing. Courts have long recognized that written oil and gas leases also carry unwritten but implied covenants. The implied covenants are not part of the written contract language. But those implied covenants are nonetheless enforceable, to-wit:

> "Under Oklahoma law, the implied covenant that a lessee of oil and gas lease will diligently explore, develop, and produce oil and gas from lease premises, requires consideration of rights of both lessor and lessee, and, in the end, final determination and protection of those rights resides with court of equity and not alone with either lessor or lessee." *Gregg v. Harper-Turner Oil Company*, 199 F.2d 1 (10th Cir. 1952). (Emphasis added).

> "Duty imposed by implied covenants of oil and gas lease to diligently develop lease and to drill offset wells to protect lease from drainage is to do that which an operator of ordinary prudence, having regard for interest of both lessor and lessee, would do." *Pohlemann v. Stephens Petroleum Company*, 197 F.2d 134 (10th Cir. 1952). (Emphasis added).

"To comply with implied covenants of an oil and gas lease that lessee diligently explore, develop, produce and protect from offset drainage, lessee must do whatever in the circumstances would be reasonably expected of a prudent operator of a particular lease, having rightful regard for interest of both lessor and lessee." _Trust Company of Chicago v. Samedan Oil Corp._, 192 F.2d 282 (10th Cir. 1952). (Emphasis added).

"The relationship of lessor and lessee implied obligations on part of lessee to operate oil and gas well prudently and with reasonable diligence, and lessee's duty in that respect was not affected by its ownership of other wells in the vicinity." _Newell v. Phillips Petroleum Company_, 144 F.2d 338 (10th Cir. 1944). (Emphasis added).

"Under Oklahoma law, there is implied covenant or duty on lessee to diligently develop lease premises." _Son-Lin Farms, Inc. v. Dyco Petroleum Corp_, 589 F.Supp. 1 (D.C. Okl. 1982). (Emphasis added).

As noted in the case law cited in Proposition III above, the implied covenant of good faith and fair dealing required from Vista Staffing Solutions, Inc. is part and parcel of the Professional Services Placement Agreement at issue herein.

The concept of good faith and fair dealing requires Vista Staffing Solutions, Inc. to make some inquiry, investigation, fact finding or due diligence of the vague Chinle Clinic Termination Notice. Such requirement is especially important when the Termination Notice merely uses vague, conclusory terms with no specific allegations of any lack of competence or unprofessional conduct. And that requirement is even stronger when the conclusory allegations are directly contrary

to 10-years of knowledge that Dr. McIntyre acted at all times in a professional and proper manner.

And the record shows Vista Staffing Solutions, Inc. performed no due diligence or inquiry, or investigation or fact finding to discover the conclusions alleged by Chinle Clinic to terminate Dr. McIntyre. Vista did nothing when it had an implied covenant and legal duty to exercise due diligence and make some affirmative inquiry.

In this cause the implied covenant of good faith and fair dealing required Vista Staffing Solutions, Inc. to conduct some inquiry, some manner of investigation, some manner of fact finding and to exercise due diligence. Vista Staffing Solutions, Inc.'s failure to fulfill the covenant of good faith and fair dealing renders it liable for damages suffered by Dr. McIntyre.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons and legal authorities set forth above, the Appellant Robert McIntyre, M.D. prays that this Court reverse the Judgment of the honorable Court below and remand this case to the Court below for further proceedings, and for such other and further relief as the Court may grant.

## REQUEST FOR ORAL ARGUMENT

The Appellant requests oral argument in this cause. The facts are lengthy and novel. The legal issues are numerous. The Court below did not allow oral argument

before granting Defendant's Motion for Summary Judgment. Oral argument will allow legal counsel for both sides to pinpoint and to highlight controlling key points. Rigorous legal argument and questions by the Judges will expedite a decision on this case.

Respectfully submitted,

*Daniel J. Gamino*

DANIEL J. GAMINO, OBA #3227
Daniel J. Gamino & Associates, P.C.
Jamestown Office Park, North Building
3035 NW 63rd Street, Suite 214
Oklahoma City, OK 73116
Telephone: (405) 840-3741
Facsimile: (405) 840-3744
Email: danieljgaminopc@gmail.com
*Attorney for Plaintiff, Robert McIntyre, M.D.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument was on the date below and in the method shown, served on the following:

| | |
|---|---|
| _____ | Mailed with postage prepaid thereon |
| _____ | FAXED |
| _____ | Hand-delivered |
| _____ | Emailed |
| <u>February 17, 2025</u> | E-filed |

Ray A. Ray, OBA #22281
Alicia Sienne Voltmer, Texas Bar No. 00797605
James Peacock, Texas Bar No. 00791419
Norman Wohlgemuth, LLP
401 S. Boston Avenue, Suite 3200
Tulsa, OK 74103
Email: <u>RRay@NWLawOK.com</u>
      <u>Alicia.voltmer@gtlaw.com</u>
      <u>James.peacock@gtlaw.com</u>
Attorneys for Vista Staffing

Jeffrey A. Gallant
Kirby Boudreaux
Patrick Steward
Sarah M. Coffey
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, OK 74119
Email:<u>Jeff.Gallant@usdoj.gov</u>
      <u>CaseView.ECF@usdoj.gov</u>
      <u>Kirby.Boudreaux@usdoj.gov</u>
      <u>Patrick.Steward@hhs.gov</u>
      <u>sarah.m.coffey@usdoj.gov</u>
Attorney for Indian Health Services

              *Daniel J. Gamino*
              DANIEL J. GAMINO

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains 6683 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportionally spaced typeface using Microsoft Word 11 in font size 14 in Times New Roman.

*Daniel J. Gamino*
DANIEL J. GAMINO
*Attorney for Appellant Crystal Bond*

Dated: *February 20, 2025*

# ATTACHMENT 1 DISTRICT COURT OPINION AND ORDER FILED 11-21-2024

32

# United States District Court
## for the Northern District of Oklahoma

---

Case No. 23-cv-421-JDR-CDL

---

ROBERT MCINTYRE, M.D.,

*Plaintiff,*

*versus*

UNITED STATES INDIAN HEALTH SERVICE; VISTA STAFFING
SOLUTIONS, INC.,

*Defendants.*

---

## OPINION AND ORDER

---

Plaintiff Robert McIntyre, M.D., brought this action for breach of contract, unlawful retaliation, and maintaining a hostile work environment against Defendant United States Indian Health Services and Defendant Vista Staffing Solutions, Inc. Dkt. 1. Vista moves to dismiss the sole claim asserted against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 18. For the reasons discussed below, the Court grants the motion.

The allegations of the complaint, which the Court accepts as true for purposes of Vista's motion,[1] are as follows: Dr. McIntyre is a psychiatrist licensed to practice medicine in Kansas, Oklahoma, Montana, and Alaska. Dkt. 1 at ¶ 12. In 2021, he contracted with Vista to provide medical services for one of Vista's clients and was assigned to work for the IHS at a clinic on the Chinle reservation in Chinle, Arizona. *Id.* at ¶¶ 13-14. In the fall of 2021, Dr. McIntyre raised concerns about alleged wrongdoing by a pharmacist and

---

[1] *See McNellis v. Douglas Cnty. Sch. Dist.,* 116 F.4th 1122, 1130 (10th Cir. 2024).

*33*

Case No. 23-cv-421

two doctors. *Id.* at ¶¶ 16-18. Shortly thereafter, one of the doctors named in Dr. McIntyre's complaints instructed Vista to end Dr. McIntyre's placement. *Id.* at ¶ 19. Vista did so without conducting any investigation into the grounds set forth for the request. *Id.* at ¶¶ 55-56. At the same time, Vista cancelled the Professional Services Placement Agreement it had with Dr. McIntyre. *Id.*

Although Dr. McIntyre quotes from the Placement Agreement in his complaint, he did not provide a copy. *See* Dkt. 1. Vista, however, attached a copy to its motion, and there is no question of the authenticity of that document. *See* Dkt. 18-1 at 3-5; Dkt. 22 at 7 (quoting the agreement).[2] The Court therefore considers the substance of that agreement,[3] which includes the following language pertinent to the parties' dispute:

> 4.    ***Cancellation of a Placement.*** . . . If Client reasonably finds the performance of [Dr. McIntyre] to be unacceptable for reasons of professional competence or personal conduct, it shall give notice to [Vista] and may then remove [Dr. McIntyre] from the Placement immediately. . . .
>
> \*\*\*
>
> 23.    ***Term and Termination.*** This Agreement shall have a term of one (1) year commencing with the date of this Agreement, and shall be automatically renewed for succeeding one-year terms until terminated . . . . [Vista] may terminate this Agreement, and any and all placements of [Dr. McIntyre], immediately by oral or written notice in the event of . . . the request by a Client that [Dr. McIntyre] be removed for any reason during the term of a placement.

Dkt. 18-1 at 3, 5.

---

[2] All citations utilize CMECF pagination.

[3] *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (noting that, when resolving a motion to dismiss, a court may consider an undisputedly authentic document that is central to a claim and referenced in a pleading).

34

Case No. 23-cv-421

Vista argues that it has not breached any obligations it owed to Dr. McIntyre under the Placement Agreement because paragraph 23 authorized it to immediately terminate the agreement once the client—in this case, the Chinle clinic—requested that Dr. McIntyre be removed from his placement. Dkt. 18 at 4, 7. Dr. McIntyre, in response, argues Vista breached its implied duty to investigate the grounds for the clinic's request. He notes that paragraph 4 of the agreement required the clinic to make a reasonable finding that his conduct or competence fell below an acceptable standard prior to requesting his removal. Dkt. 22 at 5-6. And he argues that, as a result, Vista had an implied "duty to investigate the factual basis" for the clinic's request before taking any action. *Id.* According to Dr. McIntyre, Vista's decision to remove him from the clinic and terminate the Placement Agreement without any investigation constituted a violation of Vista's obligations of good faith and fair dealing. *Id.* at 6-7.[4]

Under Utah law, a contract is interpreted in a manner that gives effect to the intent of the parties as demonstrated by the plain language of the agreement when taken as a whole. *See Juarez v. Hudson Specialty Ins. Co.*, No. 23-4101, 2024 WL 3406141, at *4 (10th Cir. July 15, 2024); *Brady v. Park*, 445 P.3d 395, 407 (Utah 2019). If the language is unambiguous, the contract may be interpreted as a matter of law. *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1235 (10th Cir. 2021).

There is no ambiguity here. Paragraph 4 describes the circumstances that would permit a *client* to immediately terminate a *placement*. Dkt. 18-1 at 3. That paragraph does not place any limitations on *Vista's* ability to terminate the agreement itself. The circumstances that would allow Vista to terminate the Placement Agreement are described in paragraph 23, which permitted Vista to terminate the agreement immediately once the clinic requested his

---

[4] The agreement provides, and the parties do not dispute, that Utah law governs. *See* Dkt. 18 at 1; Dkt. 18-1 at 5; Dkt. 22 at 6.

35

Case No. 23-cv-421

removal—regardless of the reason for the request. *Id.* at 5. Paragraph 23 does not require that Vista establish the reasonableness of the client's request before terminating the agreement. It would strain the contract to the breaking point to interpret the clause permitting Vista to terminate the agreement upon receipt of a client's request to remove Dr. McIntyre "for any reason" to mean that Vista could only terminate the agreement if it independently verified that the client had grounds for terminating Dr. McIntyre's placement under paragraph 4. The Court will not adopt a construction that effectively eliminates the term "any reason" from paragraph 23. *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 2019) (recognizing the terms of an agreement should be harmonized within the agreement as a whole, and that "all provisions should be given effect if possible").

Dr. McIntyre suggests that, even if the Placement Agreement did not expressly require Vista to investigate the grounds for the removal request, it nevertheless had an obligation to do so pursuant to the implied covenant of good faith. Dkt. 22 at 6. Dr. McIntyre is correct that, under Utah law, every contract is subject to an implied covenant of good faith and fair dealing. *See Regal RealSource LLC v. Enlaw LLC*, 554 P.3d 1112, 1127 (Utah Ct. App. 2024), *cert. denied*, No. 20240967, 2024 WL 4686063 (Utah Oct. 10, 2024). But this implied duty simply requires that a contract "be construed in a manner which assumes the parties intended that the duties and rights created by the contract should be exercised in good faith." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991). It cannot "establish new, independent rights or duties not agreed upon by the parties." *Id.* Nor can it "be used to nullify a right granted by a contract to one of the parties." *Id.* But that is precisely what Dr. McIntyre asks the Court to do when he argues that the contract "implies a covenant . . . that Vista would investigate" the reason for the clinic's request, even though the plain language of paragraph 23 does not require any investigation. Dkt. 22 at 8. In the absence of an express limitation on Vista's right to terminate the agreement when a client ends a placement, it would be improper for the Court to place a substantive limitation on that right based

36

Case No. 23-cv-421

on an implied covenant of good faith and fair dealing *See Brehany*, 812 P.2d at 55 (holding that, "in the absence of express terms limiting the right of an employer to discharge for any or no reason . . . it would be inconsistent to hold that an employer, on the basis of the implied covenant of good faith, is bound to a substantive limitation on the employer's right to discharge").

Neither the plain language of the Placement Agreement nor the implied duty of good faith required Vista to investigate the clinic's grounds for ending Dr. McIntyre's placement. Although Dr. McIntyre may be correct that the terms of the agreement do not work in his favor, they are the terms the parties agreed to, and the Court will not re-write the contract to create new obligations that are more suited to Dr. McIntyre's preferences. Under the agreement, Vista had no duty to investigate the reasons for the clinic's decision, and Dr. McIntyre has not pointed to any other duty allegedly breached by Vista. Accordingly, his breach-of-contract claim must be dismissed. *Juarez*, 2024 WL 3406141, at *8 (affirming dismissal where the defendant had no duty to defend or indemnify the plaintiff, and "did not breach the contract by declining to do so").

Neither party suggests any of Dr. McIntyre's remaining claims are asserted against Vista. *See* Dkts. 18, 22. The Court has reviewed the complaint and concludes that, while Vista is mentioned throughout the pleading, the remaining allegations are directed solely at the IHS. *See* Dkt. 1 at ¶¶ 19-22, 35, 42-43, 58-89, 96-97. Accordingly, Vista's motion to dismiss [Dkt. 18] is granted, and Dr. McIntyre's complaint is dismissed with prejudice as to Vista.

Dated this 21st day of November 2024.

JOHN D. RUSSELL
*United States District Judge*

5

37

# ATTACHMENT 2 DISTRICT COURT OPINION AND ORDER FILED 11-22-2024

*38*

# United States District Court
## for the Northern District of Oklahoma

---

Case No. 23-cv-421-JDR-CDL

---

ROBERT MCINTYRE, M.D.,

*Plaintiff*,

*versus*

UNITED STATES INDIAN HEALTH SERVICE; VISTA STAFFING
SOLUTIONS, INC.,

*Defendants*.

---

### OPINION AND ORDER

---

Plaintiff Robert McIntyre, M.D., is a licensed psychiatrist who contracted with Vista Staffing Solutions, Inc. to provide medical services at a clinic operated by the United States Indian Health Service. He argues that the IHS breached the obligations it owed him as the third-party beneficiary of an unspecified contract between Vista and the IHS; impermissibly retaliated against him; and maintained a hostile work environment at the clinic where he worked. Dkt. 1 at ¶¶ 33, 58-97. The IHS has moved to dismiss those claims, arguing, among other things, that the doctrine of sovereign immunity bars this action. Dkt. 21. The Court grants the motion.

The United States is immune from suit unless it expressly and unequivocally consents to be sued. *See Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). In general, this immunity extends to the government's agencies. *Id.* A party seeking to exert jurisdiction over the government has the burden of establishing that sovereign immunity has been waived, and must "identify[ ]

*39*

Case No. 23-cv-421

an applicable statutory waiver of sovereign immunity when challenged to do so." *Bork v. Carroll*, 449 F. App'x 719, 721 (10th Cir. 2011); *see James v. United States*, 970 F.2d 750, 753 (10th Cir. 1992).

Dr. McIntyre has not identified a waiver that would permit him to proceed with his claims on the facts alleged. Although he might be able to pursue a breach-of-contract claim in a different court under the Tucker Act,[1] his complaint does not specifically allege either an express or implied contract with the IHS that would fall within the scope of that act. The only contract identified in the complaint is the contract between Dr. McIntyre and Vista. There is no allegation that the IHS signed or was a party to that agreement, and none of the allegations identify any other contract under which the IHS owed a duty to Dr. McIntyre. *See* Dkt. 1 at ¶ 33 (referring to the "Vista Staffing Solutions Contract," but failing to allege the contract was signed by the IHS); Dkt. 18-1 (setting forth a contract with language quoted in the complaint that is signed by Vista and Dr. McIntyre).[2]

The Federal Tort Claims Act provides a limited waiver of jurisdiction, but the complaint does not allege facts that would fall within the scope of that waiver. The complaint identifies two individuals who allegedly retaliated against Dr. McIntyre and contributed to a hostile work environment. *See* Dkt. 1. But the complaint does not specify whether those individuals were employees of the IHS, rather than contractors. Because the Federal Tort Claims Act waives immunity only for the acts of federal employees, and not federal contractors, there is no clear waiver of immunity that would permit the government to be subject to suit in this case. *See Ohlsen v. United States*, 998 F.3d

---

[1] *See Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006) (recognizing that the Court of Federal Claims has been granted jurisdiction over express or implied contracts with the United States).

[2] The Court may refer to documents central to Dr. McIntyre's claim that are referenced in the complaint provided there is no dispute as to the authenticity of those documents. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). Dr. McIntyre has not disputed the authenticity of the agreement provided by Vista.

40

Case No. 23-cv-421

1143, 1154 (10th Cir. 2021) (recognizing that the FTCA carves out a limited
waiver for employees, which does not apply to independent contractors).

Dr. McIntyre cites to several federal statutes in the "jurisdiction and
venue" section of his complaint, but none of these provisions include an ex-
press waiver of sovereign immunity, and some of them do not apply to the
facts of this case. *See* 28 U.S.C. § 451 (defining terms utilized throughout Ti-
tle 28); 28 U.S.C. §§ 1331, 1337, 1343 (granting district courts original juris-
diction over certain claims); 41 U.S.C. § 4712(c)(2) (permitting complainant
to bring a de novo action "against the contractor, subcontractor, grantee, sub-
grantee, or personal services contractor," but not the agency); 5 U.S.C. § 2302
(identifying prohibited practices and internal remedies); 10 U.S.C. § 4701 (au-
thorizing complainant to bring an action against "the contractor, subcontrac-
tor, grantee, subgrantee, or personal services contractor," but not the agency).
Although it is possible that Dr. McIntyre *could* allege facts that would permit
this case to move forward, he has not yet "identif[ied] any waiver of sover-
eign immunity for the type of claims he asserted," and dismissal of this action
is warranted. *See Bonilla v. U.S. Bureau of Alcohol, Tobacco, & Firearms*, No.
11-CV-779-GKF-PJC, 2012 WL 90093, at *2 (N.D. Okla. Jan. 11, 2012). Ac-
cordingly, the IHS's motion to dismiss [Dkt. 21] is granted, and Dr. McIn-
tyre's claims against United States Indian Health Service are dismissed with-
out prejudice to refiling in this or another court.

DATED this 22d day of November 2024.

JOHN D. RUSSELL
*United States District Judge*

3

41

# ATTACHMENT 3
# DISTRICT COURT
# JUDGMENT
# FILED
# 11-22-2024

42

# United States District Court
## for the Northern District of Oklahoma

---

Case No. 23-cv-421-JDR-CDL

---

ROBERT MCINTYRE, M.D.,

*Plaintiff*,

*versus*

UNITED STATES INDIAN HEALTH SERVICE; VISTA STAFFING
SOLUTIONS, INC.,

*Defendants*.

---

### JUDGMENT

---

Pursuant to Federal Rule of Civil Procedure 58(a), and consistent with the Court's orders [Dkts. 38, 39], the Court concludes that judgment in this matter should be entered in favor of Defendants United States Indian Health Service and Vista Staffing Solutions, Inc.

IT IS THEREFORE ORDERED, ADJUDGED AND DE-CREED that judgment for Defendants and against Plaintiff is hereby entered in this matter. All pending motions are consequently denied as moot.

DATED this 22d day of November 2024.

JOHN D. RUSSELL
*United States District Judge*

43