No. 24-5148

# In the United States Court of Appeals for the Tenth Circuit

ROBERT MCINTYRE, M.D.

Appellant

vs.

UNITED STATES INDIAN HEALTH SERVICES AND
VISTA STAFFING SOLUTIONS, INC.,

Appellees

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA
CIVIL ACTION NO. 23-CV-421-JDR-CDL
THE HONORABLE JOHN D. RUSSELL

**APPELLEE VISTA STAFFING SOLUTIONS, INC.'S RESPONSE BRIEF**

Alicia Sienne Voltmer
Alicia.Voltmer@gtlaw.com
Texas Bar No. 00797605
James Eugene Peacock
James.Peacock@gtlaw.com
Texas Bar No. 00791419
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Tel: (214) 665-3600
**GREENBERG TRAURIG, LLP**

and

**Oral Argument Not Requested**

Ryan A. Ray
RRay@nwlawok.com
OBA 22281
401 S. Boston Avenue, Ste. 3200
Tulsa, Oklahoma 74103
Tel: (918) 583-7571
**NORMAN WOHLGEMUTH, LLP**

ATTORNEYS FOR APPELLEE VISTA STAFFING SOLUTIONS, INC.

# TABLE OF CONTENTS

PRIOR OR RELATED APPEALS ........................................................................... 1
STATEMENT OF JURISDICTION ........................................................................ 1
STATEMENT OF THE ISSUES ............................................................................. 1
1.0   STATEMENT OF THE CASE ....................................................................... 2
    1.1   Dr. McIntyre Filed His Complaint and Vista filed a Rule 12(b)(6) Motion to Dismiss. ........................................................................................... 2
    1.2   Dr. McIntyre Responded to the Motion to Dismiss. .............................. 3
    1.3   The District Court Entered a Final Judgment and Dr. McIntyre Filed a Notice of Appeal. ........................................................................... 3
2.0   STATEMENT OF FACTS .............................................................................. 3
    2.1   Dr. McIntyre Worked as an Independent Contractor at the Chinle Clinic. ................. 3
    2.2   Dr. McIntyre's Professional Services Agreement contained two clauses that are particularly relevant to the termination of his Placement. ........................................... 4
    2.3   The Chinle Clinic exercised its contractual right to terminate Dr. McIntyre's Placement. ................................................................. 5
3.0   SUMMARY OF ARGUMENT ....................................................................... 6
4.0   ARGUMENT ................................................................................................... 6
    4.1   The District Court Correctly Determined that Termination of Dr. McIntyre's Placement was not a Breach of his Contract. ......................... 6
    4.2   The District Court Correctly Determined that Utah's Implied Duty of Good Faith and Fair Dealing Does Not Impose on Vista a Duty to Investigate the Chinle Clinic's Decision to terminate Dr. McIntyre's Placement. ........................................................... 9
5.0   STATEMENT OF COUNSEL AS TO ORAL ARGUMENT ......................... 11
6.0   CONCLUSION .............................................................................................. 11
CERTIFICATE OF COMPLIANCE ....................................................................... 13
CERTIFICATE OF DIGITAL SUBMISSION ....................................................... 14
CERTIFICATE OF SERVICE ................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**                                                                                              Page(s)

*Andalex Resources v. Myers,*
871 P.2d 1041 (Utah Ct. App. 1994) ...................................................................10

*Brehany v. Nordstrom, Inc.,*
812 P.2d 49 (Utah 1991) ...............................................................................9, 10

*Docutel Olivetti Corp. v. Dick Brady Sys., Inc.,*
731 P.2d 475 (Utah 1986) ..................................................................................7

*Espendschied Transp. Corp. v. Fleetwood Servs.,*
422 P.3d 829 (Utah 2018) ..................................................................................6

*Friends of Tuhaye, Ltd. Liab. Co. v. Tuhaye Homeowners Ass'n,*
777 F. App'x 903 (10th Cir. 2019) ...................................................................10

*Giusti v. Sterling Wentworth Corp.,*
2009 UT 2, ¶ 46, 201 P.3d 966, *976* ................................................................8

*LD III LLC v. Mapleton City,*
2020 UT App 41, 462 P.2d 816 .........................................................................7

*Marcantel v. Michael & Sonja Saltman Fam. Tr.,*
993 F.3d 1212, 1235 (10th Cir. 2021) ................................................................7

*Olympus Hills Shopping Ctr., Ltd. v. Smith's Food & Drug Ctrs., Inc.,*
889 P.2d 445 (Utah Ct. App. 1994) ...................................................................9

*Oakwood Vill. LLC v. Albertsons, Inc.,*
2004 UT 101, 104 P.3d 1226. .....................................................................9, 10

*Peterson & Simpson v. IHC Health Svcs., Inc.,*
217 P.3d 716 (Utah 2009). .............................................................................6, 7

*Rossi v. Univ. of Utah,*
2021 UT 43, 496 P.3d 105 .................................................................................8

Appellate Case: 24-5148     Document: 26     Date Filed: 03/24/2025     Page: 5

*Smith v. Grand Canyon Expeditions Co.,*
2003 UT 57, 84 P.3d 1154 ....................................................................................... 8

*Wood v. Utah Farm Bureau Ins. Co.,*
2001 UT App 35, 19 P.3d 392 .................................................................................. 9

*Young Living Essential Oils, LC v. Marin,*
2011 UT 64, 266 P.3d 814 ...................................................................................... 10

## Statutes

28 U.S.C. § 1291 ....................................................................................................... 1

28 U.S.C. § 1332 ....................................................................................................... 1

Appellee Vista Staffing Solutions, Inc, ("Vista"), through its undersigned counsel, submits the following Answer Brief and states:

## PRIOR OR RELATED APPEALS

None.

## STATEMENT OF JURISDICTION

The United States District Court for the Northern District of Oklahoma had jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Robert McIntyre, M.D., ("Appellant") is a natural person domiciled in Oklahoma and Appellee is a Utah corporation with its main office in Utah, yielding diversity of citizenship. Vista Appendix, page 008, para. 8, 10.[1] The amount in controversy was alleged to be in excess of $75,000. APP., page 024.

The District Court entered Final Judgment on November 22, 2024 (APP., page 071), and Dr. McIntyre filed his Notice of Appeal on December 20, 2024. APP., pages 072-073. This Court's jurisdiction derives from 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Vista notes that the majority of the Dr. McIntyre's brief addresses issues related to his claims against Indian Health Services ("IHS"). Vista's response will address the issues presented to and decided by the District Court related to Vista.

Based on the foregoing, the following issues are before this Court:

---

[1] Hereinafter, "APP."

1. Whether the District Court correctly found that Vista's termination of Dr. McIntyre did not violate the plain language of his Placement Agreement; and

2. Whether the District Court correctly found that the implied duty of good faith and fair dealing does not impose on Vista any obligation to investigate the Chinle Clinic's reasons for terminating Dr. McIntyre's placement.

## 1.0     STATEMENT OF THE CASE

### 1.1   Dr. McIntyre Filed His Complaint and Vista filed a Rule 12(b)(6) Motion to Dismiss.

On October 2, 2023, Dr. McIntyre filed his Complaint, alleging Vista breached its contract with him by allowing the Chinle Clinic to unilaterally terminate his placement. *See,* APP., pages 006-026.

On November 15, 2023[2], Vista filed a Rule 12(b)(6) Motion to Dismiss ("Motion to Dismiss") wherein it argued that the facts alleged by Dr. McIntyre fail to demonstrate a breach of his Professional Services Agreement and that Utah's implied duty of good faith and fair dealing did not impose a duty to investigate the circumstances of Dr. McIntyre's separation from Chinle Clinic. APP., pages 027-042.

---

[2] On this same date, Vista filed a Motion to Transfer the Case to Another District, rendered moot by the District Court's Rule 12(b)(6) ruling.

**1.2  Dr. McIntyre Responded to the Motion to Dismiss.**

On November 29, 2023, Dr. McIntyre filed his Response in Opposition to Vista's Rule 12(b)(6) Motion to Dismiss. APP., pages 043-059.

On December 12, 2023, Vista filed its Reply to Dr. McIntyre's Response in Opposition to the Motion to Dismiss. APP., pages 060-065. The Motion was fully briefed at that time. Oral argument was not required.

**1.3  The District Court Entered a Final Judgment and Dr. McIntyre Filed a Notice of Appeal.**

On November 22, 2024, the District Court entered a final judgment in favor of Vista and IHS. APP., page 071. On December 20, 2024, Dr. McIntyre timely filed his Notice of Appeal from Final Judgment.  APP., pages 072-073.

## 2.0  STATEMENT OF FACTS

**2.1  Dr. McIntyre Worked as an Independent Contractor at the Chinle Clinic.**

Indian Health Services had a contract with Vista for Vista to provide medical staff to the Chinle Clinic. APP., page 011, para. 31. On or around January 11, 2021, Dr. McIntyre entered into a Professional Services Placement Agreement with Vista wherein, as an independent contractor, he would be placed with a Vista client that required his professional medical services (the "Professional Services Agreement"). APP., page 008, para. 13. The Professional Services Agreement

contained a Utah choice-of-law clause. APP., page 041. Dr. McIntyre was assigned to the Chinle Clinic in the position of Staff Psychiatrist. APP., page 008, para 14.

**2.2** **Dr. McIntyre's Professional Services Agreement contained two clauses that are particularly relevant to the termination of his Placement.**

Pursuant to the plain language in Paragraphs 4 and 23 of the Professional Services Agreement, the Chinle Clinic and Vista had the ability to immediately terminate Dr. McIntyre's services APP., pages 039, 041:

> 4. *Cancellation of a Placement.* Professional shall notify Company immediately if Professional is unable to fill a scheduled placement for any reason. Client may cancel any scheduled placement without cost by giving Company no less than thirty (30) days' written notice. ***If Client[3] reasonably finds the performance of Professional to be unacceptable for reasons of professional competence or personal conduct, it shall give notice to Company and may then remove Professional from the Placement immediately.*** Company or Professional may cancel any scheduled placement by giving Client no less than sixty (60) days' written notice. Professional may cancel any scheduled placement by giving written notice to Company identifying the reasons justifying cancellation if Professional becomes unable by reason of emergency or medical condition to fulfill an agreed placement. Professional shall pay to Company its unrecoverable expenses for any placement canceled by Professional. Except as provided herein, or in the applicable Placement Letter, Professional's failure to perform a placement as agreed may result in liability for breach of contract. (Emphasis added).

---

[3] "Client" is defined in Paragraph 2 of the Professional Services Agreement as the location where Dr. McIntyre worked, here, the Chinle Clinic.

**Page 4**

> 23. **_Term and Termination._** This Agreement shall have a term of one (1) year commencing with the date of this Agreement, and shall be automatically renewed for succeeding one-year terms until terminated as provided in this paragraph. Either party may terminate this Agreement at any time by giving sixty (60) days' written notice to the other party, and this Agreement shall remain in effect during the 60-day notice period and any placements scheduled during the notice period shall be performed. **_Company[4] may terminate this Agreement, and any or all placements of Professional, immediately by oral or written notice in the event of_** Professional's death, the denial or revocation of any hospital privileges for Professional, the revocation or suspension of Professional's licensing as a Professional in any state, or **_the request by a Client that Professional be removed <u>for any reason</u> during the term of a placement_**. (Emphasis added).

## 2.3 The Chinle Clinic exercised its contractual right to terminate Dr. McIntyre's Placement.

On or about October 21, 2021, Vista received a letter from the Chinle Clinic advising it was exercising its contractual right to terminate Dr. McIntyre's services at the Chinle Clinic, and Dr. McIntyre's last day at the Chinle Clinic would be November 5, 2021.  APP., page 042. The Chinle Clinic's termination notice cites Dr. McIntyre's "lack of professionalism" and failure to maintain a "positive working environment" at the Chinle Clinic as grounds for the termination of his services. APP., page 042.

---

[4] "Company" is defined in the preamble to the Professional Services Agreement as Vista.

### 3.0     SUMMARY OF ARGUMENT

This Court should affirm the District Court's order dismissing Dr. McIntyre's Breach of Contract claims against Vista for two reasons. First, the plain language of the Professional Services Agreement permits the removal. Specifically, Paragraph 4 allows the Chinle Clinic, upon reasonably finding Dr. McIntyre's performance to be unacceptable, to immediately remove Dr. McIntyre from his Placement. And under Paragraph 23 of the Professional Services Agreement, Vista had the right to immediately terminate the Agreement upon receipt of a request from a Client (Chinle Clinic) for removal of a Professional (Dr. McIntyre) *for any reason* during the term of a Placement. Second, Utah's implied duty of good faith and fair dealing does not create new contractual duties, as Dr. McIntyre's theory in that regard necessarily required.

### 4.0     ARGUMENT

**4.1     The District Court Correctly Determined that Termination of Dr. McIntyre's Placement was not a Breach of his Contract.**

The elements of a breach of contract under Utah law are: (1) a contract; (2) performance by the party seeking recovery; (3) breach of contract by the other party; and (4) damages. *Espendschied Transp. Corp. v. Fleetwood Servs.*, 422 P.3d 829 (Utah 2018).

Utah courts determine what the parties have agreed to by looking first to the plain language within the four corners of the document. *Peterson & Simpson v.*

*IHC Health Svcs., Inc.*, 217 P.3d 716, 720 (Utah 2009). When interpreting the plain language of a contract, courts are instructed to look for a reading that harmonizes the provisions and avoids rendering any provision meaningless. *Id*. Specific terms in a contract are given more weight than general terms. *See Docutel Olivetti Corp. v. Dick Brady Sys., Inc.*, 731 P.2d 475, 480 (Utah 1986). When the contract provisions are clear and complete, the meaning of the contract can be appropriately resolved by the court "as a matter of law." *LD III LLC v. Mapleton City*, 2020 UT App 41, ¶ 12, 462 P.2d 816. As the District Court correctly noted, "Under Utah law, a contract is interpreted in a manner that gives effect to the intent of the parties as demonstrated by the plain language of the agreement when taken as a whole. (citations omitted). If the language is unambiguous, the contract may be interpreted as a matter of law." App., page 068, citing *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1235 (10th Cir. 2021).

Dr. McIntyre did not allege ambiguity, and nowhere in the 24-paragraph Professional Services Agreement is there any duty of any kind imposed on Vista to "investigate" the Chinle Clinic's rationale for terminating Dr. McIntyre's contractual services. *See*, APP., pages 039-041. In fact, as set forth in Paragraph 4, the Chinle Clinic need only find Dr. McIntyre's performance to be unacceptable due to personal conduct for it to terminate his services, which it did. *See*, APP.,

page 042. And Paragraph 23 allows Vista to terminate Dr. McIntyre's services at any time and "for any reason." *See*, APP., pages 039-041.[5]

Because the Professional Services Agreement doesn't include an express duty to investigate and is unambiguous as a matter of law, the District Court properly granted the Motion to Dismiss. App., pages 066-070. *See, e.g., Rossi v. Univ. of Utah*, 2021 UT 43, ¶¶ 60, 66, 496 P.3d 105 (Court affirmed dismissal of breach of contract claim as a matter of law); *Smith v. Grand Canyon Expeditions Co.*, 2003 UT 57, ¶ 16, 84 P.3d 1154 (same).

Finding no ambiguity in the Professional Services Agreement, the District Court correctly noted that Paragraph 23 "permitted Vista to terminate the agreement immediately once the clinic requested his [Dr. McIntyre's] removal – regardless of the reason for the request. (citation omitted) ……It would strain the contract to the breaking point to interpret the clause permitting Vista to terminate the agreement upon receipt of a client's request to remove Dr. McIntyre "for any reason" to mean Vista could only terminate the agreement if it independently verified that the client had grounds for terminating Dr. McIntyre's placement under paragraph 4". The District Court declined to adopt an interpretation of the contract that was inconsistent with its plain meaning. APP., page 069.

---

[5] Under Utah law generally, there is a "presum[ption] that employment contracts are at-will," *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 46, 201 P.3d 966, 976, a presumption that the plain language of the Professional Services Agreement serves to cement.

Page 8

**4.2   The District Court Correctly Determined that Utah's Implied Duty of Good Faith and Fair Dealing Does Not Impose on Vista a Duty to Investigate the Chinle Clinic's Decision to terminate Dr. McIntyre's Placement.**

Under Utah law, parties to a contract must exercise their contractual rights in good faith. *See Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991). "Good faith and fair dealing means the parties must be faithful to the agreed common purpose and consistent with the justified expectations of the other party." *Olympus Hills Shopping Ctr., Ltd. v. Smith's Food & Drug Ctrs., Inc.*, 889 P.2d 445, 451 (Utah Ct. App. 1994) (additional citations and quotation omitted). Importantly, the covenant does not "establish new, independent rights or duties not agreed upon by the parties…" *Brehany*, 812 P.2d at 55. Put another way, a party doesn't breach the implied duty of good faith and fair dealing in contracts where it exercises its rights under the contract. *See Wood v. Utah Farm Bureau Ins. Co.*, 2001 UT App 35, ¶ 23; 19 P.3d 392 (holding defendant didn't breach the covenant of good faith and fair dealing when it took possession of records and renewal commissions it rightfully owned under a contract).

"Courts will not use the implied covenant to achieve an outcome in harmony with the court's sense of justice but inconsistent with the express terms of the applicable contract. *Oakwood Vill. LLC v. Albertsons, Inc.,* 2004 UT 101, ¶ 45, 104 P.3d 1226. Where the parties themselves have agreed to terms that address the circumstances that gave rise to their dispute, "a court has no business injecting its

own sense of what amounts to fair dealing." *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 10, 266 P.3d 814.

As discussed above, the implied duty of good faith and fair dealing doesn't create new contractual duties. *See Andalex Resources v. Myers*, 871 P.2d 1041, 1048 (Utah Ct. App. 1994) ("The obligation of good faith and fair dealing does not create a new, independent duty upon Andalex to insure that Myers receive compensation when the parties had no such agreement…[a]ccordingly, we affirm the trial court's dismissal of Myers' breach of the covenant of good faith and fair dealing claim because the Power Companies did not have an express or implied duty to assure that Andalex compensate Myers"); *Brehany*, 812 P.2d at 55 ("However, in the absence of express terms limiting the right of an employer to discharge for any or no reason and in the absence of provisions establishing procedures by which a discharge should be effectuated, it would be inconsistent to hold that an employer, on the basis of the implied covenant of good faith, is bound to substantive limitations on the employer's right to discharge."); *Friends of Tuhaye, Ltd. Liab. Co. v. Tuhaye Homeowners Ass'n*, 777 F. App'x 903, 910 (10th Cir. 2019) ("[T]he covenant of good faith and fair dealing 'cannot be read to establish new, independent rights or duties to which the parties did not agree ex ante.'" (quoting *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 45, 104 P.3d 1226, 1240).

Recognizing that Dr. McIntyre's requested relief was improper, the District Court aptly noted, "In the absence of an express limitation on Vista's right to terminate the agreement when a client ends a placement, it would be improper for the Court to place a substantive limitation on that right based on an implied covenant of good faith and fair dealing." APP., pages 069-070. Because there is neither an actual nor implied duty for Vista to investigate the reason(s) the Chinle Clinic decided to terminate Dr. McIntyre's services, its alleged failure to do so cannot be a breach of the implied covenant of good faith and fair dealing, and dismissal was warranted as a matter of law.

## 5.0    STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Counsel does not believe oral argument is necessary in this matter.

## 6.0    CONCLUSION

Because Vista did not breach Dr. McIntyre's Professional Services Agreement and Utah's implied duty of good faith and fair dealing does not create new contractual duties, Vista asks the Court to affirm the District Court's grant of a dismissal with prejudice of Dr. McIntyre's claims for breach of contract against Vista.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Alicia Sienne Voltmer*
Alicia Sienne Voltmer
Texas Bar No. 00797605
Alicia.Voltmer@gtlaw.com
James E. Peacock
Texas Bar No. 00791419
James.Peacock@gtlaw.com
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Tel: (214) 665-3600

and

*/s/ Ryan A. Ray*
**NORMAN WOHLGEMUTH, LLP**
Ryan A. Ray
OBA# 22281
rray@nwlawok.com
401 S. Boston Avenue, Suite 3200
Tulsa, OK 74103
Telephone: (918) 583-7571

# CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because this document contains 2575 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

<div style="text-align: right">

*/s/ Alicia Sienne Voltmer*
Alicia Sienne Voltmer

</div>

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

    1.    All required privacy redactions have been made per 10th Cir. R. 25.5;

    2.    If required to file additional hard copies, that the ECF submission is an exact copy of those documents;

    3.    The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Windows Defender Antivirus, version 1.409.160.0 and according to the program are free of viruses.

    */s/ Alicia Sienne Voltmer*
    Alicia Sienne Voltmer

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 24th day of March 2025, a true and correct copy of the above and foregoing was served upon all counsel by CM-ECF.

    */s/ Alicia Sienne Voltmer*
    Alicia Sienne Voltmer