# CASE NO. 24-5148

## IN THE 10TH CIRCUIT COURT OF APPEALS
## DENVER, COLORADO

ROBERT McINTYRE, M.D.
Appellant

*versus*

UNITED STATES INDIAN HEALTH SERVICES and
VISTA STAFFING SOLUTIONS, INC.,
Appellees

# APPELLANT'S CORRECTED REPLY BRIEF

Appeal from the United States District Court for the Northern District of
Oklahoma, Honorable John D. Russell, United States District Judge,
Original Case Number 23-cv-00421-CDL

DANIEL J. GAMINO, OBA 3257
Jamestown Office Park, North Building
3035 NW 63rd Street, Suite 214
Oklahoma City, OK 73116
Telephone: (405) 840-3741
Facsimile: (405) 840-3744
Email: danieljgaminopc@gmail.com
*Attorney for Appellant*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**TAB**                                                    **PAGE**

| | |
|---|---|
| **TABLE OF AUTHORITIES-CASES** | i |
| **TABLE OF AUTHORITIES-STATUTES** | iii |
| **TABLE OF ACTS** | iv |
| **INTRODUCTION** | 1 |
| **PROPOSITION I**<br><br>***VISTA STAFFING SOLUTIONS, INC. BREACHED THE CONTRACT BY ACTING WITHOUT THE REQUIRED "REASONS" TO TERMINATE DR. McINTYRE*** | 1 |
| **PROPOSITION II**<br><br>***VISTA VIOLATED THE UTAH LAW OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING IN THE CONTRACT AT ISSUE.*** | 6 |
| **PROPOSITION III**<br><br>***THE COURT BELOW POSSESSED SUBJECT MATTER JURISDICTION.*** | 9 |
| **PROPOSITION IV**<br><br>***DR. McINTYRE'S COMPLAINT DID PLEAD A LAWFUL CAUSE OF ACTION AGAINST THE UNITED STATES INDIAN HEALTH SERVICE.*** | 13 |
| **A. 41 U.S.C. §4712 GRANTS THE DISTRICT COURT JURISDICTION.** | 13 |

| | |
|---|---|
| **B. 5 U.S.C. §2302(8) GRANTS THE DISTRICT COURT JURISDICTION.** | 14 |
| **C. 10 U.S.C. §2409 GRANTS THE DISTRICT COURT JURISDICTION.** | 17 |
| **D. 42 U.S.C. §1395 GRANTS THE DISTRICT COURT JURISDICTION.** | 18 |
| **E. 25 C.F.R. §11.448(b) GRANTS JURISDICTION TO THE COURT BELOW.** | 19 |
| **F. 42 U.S.C. §181.16 GRANTS JURISDICTION TO THE COURT BELOW.** | 20 |
| **G. 28 U.S.C. §1491(b)(1) GRANTS JURISDICTION TO THE LOWER COURT.** | 20 |
| **PROPOSITION V**<br><br>***DEFENDANT'S RANK SPECULATION ABOUT MULTIPLE SUITS IS WITHOUT MERIT.*** | 21 |
| **CONCLUSION AND RELIEF SOUGHT** | 21 |
| **REQUEST FOR ORAL ARGUMENT** | 22 |
| **CERTIFICATE OF SERVICE** | 23 |
| **CERTIFICATE OF COMPLIANCE** | 24 |

## TABLE OF AUTHORITIES

### CASES:

| | |
|---|---|
| *Amalgamated Sugar Company v. Bergland*, 664 F.2d 818 (10th Cir. 1981) | 9 |
| *Berube v. Fashion Center, Ltd.*, 771 P.2d 1033, 1044-45 (Utah 1989) | 6 |
| *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991) | 6, 7 |
| *CSC Recovery Corp v. Daiab Steel Company. Ltd.*, No. 94 CIV, 9214, WL 661122 at *3 (S.D.N.Y. Oct. 22, 1997) | 15 |
| *Docutel Oliventti Corp v. Dick Brady Systems, Inc.*, 731 P.2d 475, 480 (Utah, 1986 | 1 |
| *Federal Trade Commission, Appellee v. Glaxosmithkline, Appellant*, 294 F.3d 141 (D.C. Cir. 2002) | 16 |
| *H.W. Carter and Sons, Inc. v. William Carter Company*, No. 95 CIV, 1274, 1995, W.L. 301351 at *8 S.D.N.Y. May 16, 1995 | 15, 17 |
| *In Re. Bieter Company, Petition*, 16 F.3d 929 (8th Cir. 1994) | 15, 16 |
| *In Re CopperMarket Antitrust Litigation*, 200 FRD 223 (S.D.N.Y. 2001) | 15, 16 |
| *LD III, LLC v. Mapleton City*, 2020 UT App. 41, ¶12, 462 P.2d 816 | 1 |
| *Leigh Furniture and Carpet Company v. Isom*, 657 P.2d 293, 311 (Utah 1982 | 7 |
| *Marcantel v. Michael and Sonya Saltman Family Trust*, 993 F.3d 12121, 1255 (10th Cir. 2021) | 2 |
| *McGuire v. US*, 550 F.3d 903 (9th Cir. 2008) | 10 |
| *NXIVM Corp v. O'Hare*, 244 FRD 109, (N.D.N.Y. 2007) | 17 |

| | |
|---|---|
| *Olympus Hill Center, Ltd. v. Smith's Food*, 889 P.2d 445 (Utah CT. APP. 1994) | 7 |
| *Peterson and Simpson v. HIC Health Services, Inc.*, 217 P.3d 706, 721 (Utah, 2009 | 1 |
| *Port City Properties v. Union Pacific Railroad Company*, 518 F.3d 1186 (10th Cir. 2008) | 21 |
| *Regal Real Source, LLC v. Enlaw, LLC*, 554 P.3d 1112, 1127 (Utah CT. APP. 2024) cert. denied NO. 20240967, 2024 W.L. 4686063 (Utah, October 10, 2024) | 6 |
| *Resource Management Company v. Weston Ranch and Livestock Company*, 706 P.2d 1028, 1037 (Utah 1982) | 7 |
| *Scarlett v. National Science Foundation Office of Inspector General*, 22-CV-188 (BAH, 2022 WL 17830227 at *6 (D.D.C. December 21, 2022) | 14 |
| *St. Benedicts Development Company v. St. Benedicts Hospital*, 811 P.2d 194, 199 (Utah 1991) | 7 |
| *Stafford Training, Inc. v. Lovely*, No. 05-G-488 (N.D. Ill. 2007), WL 611282 | 16 |
| *State of New Mexico v. Regan*, 745 F.2d 1318 (10th Cir. 1984) | 9 |
| *Ted R. Brown and Associates, Inc. v. Carnes Corp.*, ;753 P.2d 964, 970 (Utah APP. 1988) | 7 |
| *United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010) | 17 |
| *United States v. Schwimmer*, 892 F.2d 237 (2nd Cir. 1989 cert. denied 502 US 810, 112 S.Ct. 55, L.Ed.2d 31 (1991) | 15 |
| *Upjohn Company v. United States, 449 US 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1982)* | 15, 16 |
| *US v. Kovel*, 296 F.2d 918 (2nd Cir. 1961) | 17 |

ii

| | |
|---|---|
| *US Postal Service v. Phelps Dodge REF Corp*, 852 F. Supp. 156 (E.D.N.Y. 1994) | 17 |
| *Wood v. Utah Farm Bureau Insurance Company*, 19 P.3d 392 (2001 UT APP. 35) | 7 |

**STATUTES:**

| | |
|---|---|
| 25 C.F.R. §11.448(b) | 19, 20 |
| 25 C.F.R. §11.448(1) | 19 |
| 5 U.S.C. §2302(8) | 17 |
| 10 U.S.C. §2409 | 17, 18 |
| 28 U.S.C. §1367 | 10 |
| 28 U.S.C. §1367(a) | 10 |
| 28 U.S.C. §1491(b)(1) | 9 |
| 28 U.S.C. §1631 | 11 |
| 28 U.S.C. §1491(b)(1) | 20, 21 |
| 28 U.S.C. §4712 | 10, 13 |
| 28 U.S.C. §4712(b)(2) | 10 |
| 41 U.S.C. §4712(a)(1) | 13, 14 |
| 41 U.S.C. §4712(c)(2) | 11, 14 |
| 42 U.S.C. §181.16 | 20 |
| 42 U.S.C. §1395 | 18, 19 |

**ACTS:**

| | |
|---|---|
| **Age Discrimination Act of 1975** | **20** |
| **Health Care Quality Improvement Act of 1986 Public Law 99-660** | **7** |
| **Rehabilitation Act of 1973** | **20** |
| **Title VI Civil Rights Act of 1964** | **20** |
| **Title IX Education Amendments of 1972** | **20** |

## **INTRODUCTION**

In this case Dr. McIntyre has named two different Defendants, United States Indian Health Services and Vista Staffing Solutions, Inc. Each of the respective Appellees filed their own Response Brief.

Accordingly, this Reply Brief is directed to the prior filing of Vista Staffing Solutions, Inc. and to the filing of the United States Indian Health Services.

## **PROPOSITION I**

### ***VISTA STAFFING SOLUTIONS, INC. BREACHED THE CONTRACT BY ACTING WITHOUT THE REQUIRED "REASON" TO TERMINATE DR. McINTYRE.***

The Response Brief by Vista Staffing Solutions, Inc. falls into the same pit as the Court below.

There is no dispute that in reviewing any contract the Court first looks to the plain language within the four corners of the document, _Peterson and Simpson v. HIC Health Services, Inc._, 217 P.3d 706, 721 (Utah 2009). And when interpreting the plain language of the contract, courts are instructed to look for a reading that harmonizes the provisions and avoids rendering any provision meaningless Id. Specific terms in a contract are given more weight than general terms, see _Docutel Oliventti Corp v. Dick Brady Systems, Inc._, 731 P.2d 475, 480 (Utah 1986). When the contract provisions are clear and complete, the meaning of the contract can be appropriately resolved by the Court "as a matter of law," _LD III, LLC v. Mapleton City_, 2020 UT App. 41, ¶12, 462 P.2d 816.

And the District Court below correctly noted in its Opinion, to-wit:

"Under Utah law, a contract is interpreted <u>in a manner that gives effect to the intent of the parties as demonstrated by the plain language of the agreement when taken as a whole,</u> (citations omitted). If the language is unambiguous, the contract may be interpreted as a matter of law." App., Page 068, citing *Marcantel v. Michael and Sonya Saltman Family Trust*, 993 F.3d 1212, 1255 (10th Cir. 2021). (Emphasis added).

In the case at bar, paragraph 4 of the Vista Staffing Solutions, Inc.'s contract provides in pertinent part:

"If client <u>reasonably finds</u> the performance of Professional to be unacceptable for <u>reasons of professional competence or personal conduct,</u> it shall give notice to the Company and may then remove Professional from the Placement immediately." (Emphasis added).

The language of Paragraph 4 is clear. Paragraph 4 requires IHS to provide two things to Vista. First IHS must "reasonably find" the performance of the professional was unacceptable. And second, IHS must produce the "<u>reasons</u> of professional competence or personal conduct" to Vista. Only when these two threshold requirements are met may Vista terminate the placement of Dr. McIntyre.

A review of the IHS notice shows it fails on both counts.

First, the IHS must "reasonably find" Dr. McIntyre's performance was somehow unacceptable. The cryptic "Termination Notice" from the "Contracting Specialist" Tilda Nez does not provide any specific act or omission alleged against Dr. McIntyre to support how IHS "reasonably found" his performance was unacceptable.

IHS tenders no facts, no circumstances, no acts, or omissions and no witnesses, no affidavits or contemporaneous statements to show how it "reasonably found" fault with Dr. McIntyre's work performance. Nor were any contemporaneous documents submitted to

Vista along with the Termination Notice to demonstrate how IHS "reasonably found" Dr. McIntyre's performance was unacceptable.

Nor did the non-physician, non-executive "Contract Specialist" identify any process or protocol used by IHS in house to obtain evidence to support any "reasonable finding" of Dr. McIntyre's alleged unacceptable conduct.

Absent the required "reasonable finding" in Paragraph 4 by IHS then Vista in turn cannot proceed under Paragraph 4 of the Contract.

Second, in order to trigger termination of the placement of Dr. McIntyre, the client (IHS) must also communicate to Vista Staffing Solutions, Inc. that Dr. McIntyre's performance was unacceptable "for <u>reasons</u> of professional competence or personal conduct." (Emphasis added). Under paragraph 4 Vista Staffing Solutions, Inc. may only act if it receives "<u>reasons</u> of professional competence or personal conduct" involving Dr. McIntyre. (Emphasis added).

Vista did not receive at any time any such "reasons" as required. Vista only received general conclusions offered by a non-physician, non-executive "Contracting Specialist." That "Contracting Specialist" somehow opined that Dr. McIntyre demonstrated a "lack of professionalism" and that he failed to maintain a "positive working environment." Those are mere general conclusions. There is no evidence the "Contract Specialist" is a physician or an executive or involved in rendering health care services. Therefore, any information they received by definition is hearsay. And those omissions underline the fact that Vista never received from IHS the required "reasons" to support their proffered conclusions. No underlying "<u>reasons</u>" were ever provided to enable Vista to act under paragraph 4.

3

Dr. McIntyre had served under various contracts with Vista Staffing Solutions, Inc. for a period in excess of 12-years. Dr. McIntyre had achieved an excellent work record and work performance. The hearsay, unsupported conclusions from the "Contract Specialist" never claimed Dr. McIntyre made diagnostic errors on any patient or prescribing errors or that he lacked any clinical skills or failed to chart in a timely manner or there were patient or patient family complaints against Dr. McIntyre. No evidence was presented Dr. McIntyre was named in any medical malpractice suits at the Chinle Clinic. Nor was evidence provided Dr. McIntyre was the subject of any attorney demand letter based on any act or omissions with any patient at the Chinle Clinic. Nor were there allegations Dr. McIntyre was inappropriate in his conduct in dealing with the Chinle Clinic staff, patients or visitors. And there were no allegations about any chronic tardiness, absenteeism, or any verbal or physical altercations by Dr. McIntyre with any Chinle Clinic staff, patient or visitor. Nor was there any allegation Dr. McIntyre personally used or abused any CDS, alcohol or illegal drugs.

If Vista Staffing wanted to act on the IHS allegations, then Vista Staffing had a plain contract duty under paragraph 4 to request IHS to provide (1) how it "reasonably found" Dr. McIntyre's performance was unacceptable and (2) the exact "reasons of professional competence or personal conduct" that support its bald conclusions. For example, did Dr. McIntyre make continued misdiagnosis? Did Dr. McIntyre prescribe medications not medically appropriate? Was his charting erroneous? Or incomplete? Did IHS receive numerous patient or family complaints or lawsuits about Dr. McIntyre's performance, demeanor or deportment? Did Dr. McIntyre cause medical malpractice actions against

4

IHS. Was he chronically tardy or absent? Did Dr. McIntyre have anger management issues? Did he verbally or physically assault IHS staff or patients? Was Dr. McIntyre personally abusing CDS, alcohol or illegal drugs?

Vista Staffing Solutions, Inc. did not inquire of IHS. And Vista Staffing never received any "reasons" to support the "Contracting Specialist's" general conclusory allegations. Paragraph 4 does not require Vista Staffing to conduct any formal factfinding or any investigation. But the contract does require Vista Staffing to obtain "reasons" if they want to take action under Paragraph 4.

Without the required "reasons" Vista Staffing had no contract basis to act under paragraph 4. And termination of Dr. McIntyre was a breach of paragraph 4.

Similarly, paragraph 23 provides that Vista may terminate the contract in the event of "the request by a Client" that the "professional be removed <u>for any reasons</u> during the term for placement." (Emphasis added).

The Vista contract does contain some protection for Dr. McIntyre or any other similarly situated independent contractors. A Client must provide a "<u>reason</u>" to seek termination of the independent contractor. Such language protects the physicians from termination based on unspecified, subjective grounds.

Again, the only notice Vista received from the "Contract Specialist" were alleged bald conclusions of "lack of professionalism" and failure to maintain a "positive working environment." But IHS never provided the required "<u>reason</u>" to support either conclusion. Vista received not a sentence fragment alleging any fact or "<u>reason</u>" to support the general conclusions offered.

5

And without the required "<u>reason</u>" Vista had no contract basis to act under paragraph 23. And the termination of Dr. McIntyre was a breach of paragraph 23. Vista staffing breached the plain language of Paragraph 4 and Paragraph 23 of the contract at issue.

## **PROPOSITION II**

### ***VISTA VIOLATED THE UTAH LAW OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING IN THE CONTRACT AT ISSUE.***

The Court below did recognize that the applicable Utah law on the contract contained an implied covenant of good faith and fair dealing, to-wit:

> "<u>Dr. McIntyre is correct that, under Utah law, every contract is subject to an implied covenant of good faith and fair dealing.</u> See *Regal Real Source, LLC v. Enlaw, LLC*, 554 P.3d 1112, 1127 (Utah CT. APP. 2024), cert. denied No. 20240967, 2024 W.L. 4686063 (Utah, October 10, 2024)." (DOC. 38, Page 4). (Emphasis added).

The Court below also noted that duties and rights created by the contract should be exercised in good faith, to-wit:

> "But this implied duty simply requires that a contract 'be construed in a manner which assumes the parties intended that the duties and rights created by the contract <u>should be exercised in good faith</u>.' *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991)." (Emphasis added).

And the Utah law requiring good faith and fair dealing in contract matters is well settled, to-wit:

> "After *Rose*, this Court modified the at will doctrine as it had been applied. *Berube v. Fashion Center, Ltd.*, 771 P.2d 1033, 1044-45 (Utah, 1989), held that the presumption of an at will discharge right created by an indefinite term employment agreement <u>could be modified by implied in fact contract terms found in an employment manual and that employee's continued</u>

6

performance of services could be adequate consideration for those terms. . . . .Third, a few states have held that an indefinite-term employment contract is subject to an implied in law covenant of good faith and fair dealing that make an employer liable for a bad faith discharge." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49 (Utah, 1991). (Emphasis added).

"Smith's argument poses the question of whether parties who retain express power or discretion under a contract can exercise that power or discretion in such a way as to breach the covenant of good faith and fair dealing. We believe that they can. Our courts have determined that a party must exercise express rights awarded under a contract reasonably and in good faith. See *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah, 1991). . . . .*Resource Management Company v. Weston Ranch and Livestock Company*, 706 P.2d 1028, 1037 (Utah, 1985) (Party must exercise rights under contract reasonably and in good faith); *Leigh Furniture and Carpet Company v. Isom*, 657 P.2d 293, 311 (Utah, 1982) (Party has duty to exercise all rights under contract reasonably and in good faith); *Ted R. Brown and Associates, Inc. v. Carnes Corp.*, 753 P.2d 964, 970 (Utah, APP. 1988) (Party must exercise express rights in good faith).

It is fundamental that every contract includes a covenant of good faith and fair dealing with respect to dealings between the parties, *St. Benedicts Development Company v. St. Benedicts Hospital*, 811 P.2d 194, 199 (Utah, 1991)." *Olympus Hill Center, Ltd. v. Smith's Food*, 889 P.2d 445 (Utah, CT. APP. 1994).

"Parties to a contract must exercise their contractual rights in good faith." *Wood v. Utah Farm Bureau Insurance Company*, 19 P.3d 392 (2001 UT APP. 35). (Emphasis added).

And Dr. McIntyre's termination is not an isolated Utah event. The sanction of termination tracks Dr. McIntyre when he seeks other employment. This Court may take judicial notice of the National Practitioner Data Bank established by Title IV of the Health Care Quality Improvement Act of 1986 Public Law 99-660. The data bank serves as a repository and clearing house for any state board disciplinary action against a physician,

any malpractice filings against a physician, loss of hospital or board credentials.  Such information is publicly and instantly available to all state jurisdictions.

Any sudden "termination" of Dr. McIntyre as an independent contractor physician creates an immediate cloud over Dr. McIntyre's clinical competence and his personal behavior.  Since Vista Staffing Solutions, Inc. for 12 years sent Dr. McIntyre out as a locum tenens physician, Vista Staffing Solutions, Inc. had a direct stake in Dr. McIntyre's competence and personal conduct and the safety of patients entrusted to his care.  That long relationship and Vista's duty of good faith and fair dealing makes Vista aware of the extreme ramifications for Dr. McIntyre or any physician similarly "terminated."  That knowledge makes it imperative that Vista Staffing Solutions, Inc. exercise at least a modicum of good faith and fair dealing to ascertain some "reason" to support any unverified, bald conclusions offered by a non-physician, non-executive level "Contracting Specialist" who provided "notice" to Vista to provide the reasons thereof.

A simple follow up by Vista Staffing Solutions, Inc. to the "Contracting Specialist" would allow Vista to quickly discern if there was in fact the required "reason" to support the general and conclusory allegations lodged against Dr. McIntyre by the "Contracting Specialist."

Vista Staffing Solutions, Inc.'s utter failure to even generate a simple follow up inquiry to the "Contracting Specialist" constitutes blatant violation of the Utah law of implied duty of good faith and fair dealing in any contract.

## PROPOSITION III

### *THE COURT BELOW POSSESSED* <br> *SUBJECT MATTER JURISDICTION.*

Herein, the Defendant IHS argues that the <u>US Court of Claims has "exclusive</u> <u>jurisdiction" over a claim against the US concerning amounts greater than $10,000.00</u>. The Defendant's cited legal authority are two 10th Circuit Decisions from the 1980s, *State of* *New Mexico v. Regan*, 745 F.2d 1318 (10th Cir. 1984) and *Amalgamated Sugar Company* *v. Bergland*, 664 F.2d 818 (10th Cir. 1981). Like one of the blind men grasping one part of an elephant, the Defendant does not see the entire picture.

First, the Defendant's brief makes no reference to 28 U.S.C. §1491(b)(1). That section grants the District Court below <u>and</u> the US Court of Federal Claims equal and concurrent jurisdiction over Dr. McIntyre's case. Section 1491(b)(1) provides as follows, to-wit:

> "**(b)(1)** <u>Both the United States Court of Federal Claims and the District</u> <u>Courts of the United States shall have jurisdiction to render judgment on an</u> action by an interested party objecting to. . . . .<u>any alleged violation of statute</u> <u>or regulation in connection with a procurement or a proposed procurement.</u> <u>Bot the United States Court of Federal Claims and the District Courts of the</u> <u>United States shall have jurisdiction to entertain such an action without</u> <u>regard to whether suit is instituted before or after the contract is awarded.</u>" (Emphasis added).

Further, the Defendant does not address holdings of two much more recent 10th Circuit decisions that echo the language of §1491(b)(1), to-wit:

> "The Tucker Act's grant of jurisdiction to the Court of Federal Claims is frequently referred to as exclusive, <u>but that Court's jurisdiction is exclusive</u> <u>only to the extent that congress has not granted any other Court authority to</u>

hear the claims that may be decided by the Claims Court." *McGuire v. US*, 550 F.3d 903 (9ᵗʰ Cir. 2008). (Emphasis added).

"While the Tucker Act provides the most common path for a suit against the United States involving a contract, that path is only exclusive to the extent no other Court has authority to hear the action. (Emphasis added).

Second, §4712(b)(2) allows the Court below jurisdiction over Vista Staffing Solutions.

And 28 U.S.C. §1367 grants the Court below supplemental jurisdiction over Dr. McIntyre's claim against IHS. Section 1367(a) provides in pertinent part, to-wit:

"(a). . . . . In a civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . . ." (Emphasis added).

In the case at bar, Dr. McIntyre's claims against IHS are directly intertwined with his claims against Vista. IHS and Vista are in privity of contract. And Dr. McIntyre is a third-party beneficiary of the IHS/Vista contract at issue. Both IHS and Vista have a long and heretofore successful contract with Dr. McIntyre. His lengthy medical practice has demonstrated his value to both contract parties and to the Native population. And Vista is operating under Utah law that places on Vista a duty to exercise good faith and fair dealing in all contracts.

Indeed, IHS and Vista are the alpha and omega of Dr. McIntyre's claims. They are in fact and in law part of the same case or controversy as identified in §1367(a), supra.

And §4712 coupled with the horsepower of 28 U.S.C. §1367 grants the Court below lawful jurisdiction over this cause.

Further, the Defendant Brief itself notes the language of 41 U.S.C. §4712(c)(2). That section provides as follows, to-wit:

> "If the head of an executive agency issues an order denying relief under ¶(1) or has not issued an order within 210-days after the submission of a complaint under §(b) or in the case of an extension of time under ¶(b)(2)(B), not later than 30-days after the expiration of the extension of time, and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor, sub-contractor, grantee, sub-grantee, or personal services contractor to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy. Such an action shall, at the request of either party to the action, be tried by the court with a jury. . . . ."

Under that language Dr. McIntyre did raise formal complaint with supervisors Dr. Ritchie and Dr. Baker. When the two supervisors failed to take curative action, Dr. McIntyre raised those issues by email of September 16, 2021 to OIG Investigator Lauren Hanover and by Dr. McIntyre's follow up email of October 13, 2021, at 8:30 a.m. Dr. McIntyre never received any reply from the Agency head. And under §4712(c)(2) the Court below gained jurisdiction over this cause without regard to an amount in controversy.

Finally, the Defendant itself notes the relevance of 28 U.S.C. §1631 which permits a Court to transfer a case over which it lacks jurisdiction "in the interest of justice." In Dr. McIntyre's case the interest of justice all favor such transfer.

As pled in the Complaint, Dr. McIntyre is a bonafide whistleblower because in the course of his employment Dr. McIntyre personally became aware of unlawful activities concerning a pharmacist Walter Lloyd who was providing pharmacy services at the Chinle, Arizona Reservation. When Dr. McIntyre uncovered the unlawful actions of a sexual

11

misconduct coverup by the Clinical Director Eric Ritchie, M.D. and Assistant Medical Director Andrew Baker, M.D., then Dr. McIntyre had a duty to report per the American Medical Association and American Psychiatric Association's ethical guidelines. Dr. McIntyre then notified OIG Agent Mr. Hanover promptly, who happened to be onsite at Chinle investigating reports of missing controlled substances at the Chinle pharmacy. IHS leaders already had ignored Dr. McIntyre's previous concerns for patient health and public safety, specifically regarding suicidal and homicidal patients being allowed to "walk out of the hospital emergency room or elope from the Adult Inpatient Unit." Other specific protected disclosures of public health and safety issues not addressed by the OIG letter of March 8, 2022, by Dr. McIntyre were the "lack of informed consent" regarding full medical disclosure to the Navaho during the Covid-19 pandemic, as well as, the denial of a "compassionate medical waiver" of the Covid vaccine from Dr. Richard Regan addressed to Dr. Ritchie for Dr. McIntyre. This denial is a violation of Special General Memorandum (SGM 21-04) and abuse of office.

Dr. McIntyre also blew the whistle by his follow up email of October 13, 2021, 8:30 a.m. to CIG Investigator Lauren Hanover again bringing facts and circumstances to Mr. Hanover's attention against the pharmacist and that also constituted a whistleblowing on Dr. Ritchie and Dr. Baker who failed to take corrective action. Eight days later, in clear retaliation, Dr. McIntyre was terminated orally by Dr. Ritchie who delegated that termination be communicated to the Plaintiff. Such overt breach of contract and failure to accord Dr. McIntyre whistleblower protection is well pled in the case at bar. The statutes pled create a network of protection for Dr. McIntyre as a whistleblower. Yet Dr. Ritchie

12

and the IHS failed to cite a single incident of professional incompetence or personal conduct by Dr. McIntyre to Vista Staffing Solutions, Inc. or in the alternative to prove the information Dr. McIntyre provided to Defendant Vista Staffing Solutions, Inc. was demonstrably false and untrue.

All of those factors demonstrate that "in the interest of justice" the Court below had subject matter jurisdiction.

### PROPOSITION IV

### *DR. McINTYRE'S COMPLAINT DID PLEAD A LAWFUL CAUSE OF ACTION AGAINST THE UNITED STATES INDIAN HEALTH SERVICE.*

### A. 41 U.S.C. §4712 GRANTS THE DISTRICT COURT JURISDICTION.

Section 4712(a)(1) provides as follows, to-wit:

"(a) An employee of a contractor, sub-contractor, grantee, sub-grantee, or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in ¶(2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant; a gross waste of Federal funds; an abuse of authority relating to a Federal contract or grant; a substantial and specific danger to public health or safety; or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

(2) PERSONS AND BODIES COVERED. The persons and bodies described in this paragraph or the persons and bodies as follows:

    (A) A member of congress or a representative of a committee of congress.
    (B) An Inspector General
    (C) The Government Accountability Office
    (D) A federal employee responsible for contract or grant oversight or management at the relevant agency." (Emphasis added).

As noted, §4712(c)(2) has language that applies when the Agency fails to issue an order within 210-days after submission of a complaint.

The Defendant claims §4712 does not apply to Dr. McIntyre because the statute "does not authorize relief against a federal agency," (US IHS Response Brief, Page 7). The only legal authority cited is the appellate decision *Scarlett v. National Science Foundation Office of Inspector General*, No. 22-CV-188 (BAH), 2022 WL 17830227, at *6 (D.D.C. December 21, 2022).

Yet an examination of *Scarlett* reveals that it deals with an unsuccessful research grant applicant. That case was plagued with venue issues and "significant substantive problems" raised thereby. And the Court raised questions that Plaintiff's lack of claim specificity about her precise details. Dr. McIntyre does not have those problems. Dr. McIntyre seeks relief under 4712(a)(1) and under §4712(c)(2), supra.

### B. 5 U.S.C. §2302(8) GRANTS THE DISTRICT COURT JURISDICTION.

Herein the Defendant points out that Dr. McIntyre is not an "employee or applicant for employment" in the federal service.

However, Dr. McIntyre does fit the U.S.C. definition of "employee" in that he was appointed to his federal position by IHS seeking his employment through Vista Staffing Solutions, Inc. And evidence shows that Dr. McIntyre successfully practiced medicine in the federal institution for many years working seamlessly with federal employees. To the patients and staff Dr. McIntyre was the federal physician who followed the same workplace protocols and work rules as any other federal employee.

Under the evidence of this case Dr. McIntyre constitutes the "functional equivalent" of any federal employee at the Chinle Reservation.

The functional equivalent doctrine is nothing new. The functional equivalent doctrine is used commonly to expand the common law attorney-client privilege to include many people who are neither the attorney nor the client but they are nevertheless found to be protected by the attorney-client privilege.

The leading case on the functional equivalent doctrine is *Upjohn Company v. United States*, 449 US 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1982). *Upjohn* is cited with approval in the case *In Re CopperMarket Antitrust Litigation*, 200 FDR 23 (2001). Therein the Court held as follows, to-wit:

> "Consistent with Supreme Court standard 503, courts have held that the attorney-client privilege protects communications between lawyers and agents of a client where such communications are for the purpose of rendering legal advice, *Upjohn Company v. United States*, (citation omitted), *United States v. Schwimmer*, 892 F.2d 237 (2nd Cir. 1989), cert. denied 502 US 810, 112 S.Ct. 55, L.Ed.2d 31 (1991); (attorney-client privilege protects communications made to agents assisting client); *CSC Recovery Corp v. Daiab Steel Company, Ltd.*, No. 94 CIV, 9214, WL 661122 at*3 (S.D.N.Y. Oct. 22, 1997), (attorney-client privilege protects communications between clients and attorneys and agents of both); *H.W. Carter and Sons, Inc. v. William Carter Company*, No. 95 CIV 1274, WL 301351 at *3 (S.D.N.Y. May 16, 1995); (communications by public relations consultants who assisted attorneys in rendering legal advice protected by the attorney-client privilege)."

In the decision *In Re. Bieter Company, Petition*, 16 F.3d 929 (8th Cir. 1994) the 8th Circuit extended the attorney-client privilege to non-lawyer Dennis S. Klohs as follows, to-wit:

> "We hold, then, that on the basis of the record before us, the (attorney-client) privilege applies to communications made between Klohs and Dorsey, and

that the disclosure of otherwise privileged documents to Klohs in the course of his confidential communications with counsel did not destroy the privilege.  Klohs is for the purpose of the privileged, the functional equivalent of Bieter's employee, and the communication in question fell within the scope of his duties, were made at the behest of his superior, and were made for the purpose of seeking legal advice for Bieter."  (Emphasis added).

In *Federal Trade Commission, Appellee, v. Glaxosmithkline, Appellant*, 294 F.3d 141 (D.C. Cir. 2002) the DC Circuit extended the attorney-client privilege to include documents shared by the client with the public relations and government officer consultant who was not a GSK employee, to-wit:

> "Our conclusion that the documents are protected by the attorney-client privilege extends also to those communications that GSK shared with its public relations and government affairs consultants.  The Kinzig Affidavit notes that GSK's corporate counsel, 'worked with these consultants in the same manner as they did with full time employees; indeed, the consultants acted as part of the team with full time employees regarding their particular assignments' and, as a result, the consultants 'became intrical members of the team assigned to deal with issues (that). . . .were completely intertwined with GSK's litigation and legal strategies.' . . . .  See *In Re Coppermarket Antitrust Litigation*, 200 FRD 223 (S.D.N.Y. 2001)."

In *Stafford Training, Inc. v. Lovely*, No. 05-G-488 (N.D. Ill. 2007), WL 611282 the Court relied on the Supreme Court's *Upjohn* decision as the basis to extend the attorney-client privilege, to-wit:

> "*In Re Beiter Company*, 16 F.3d 929 (8th Cir. 1994), the court determined that an independent consultant's relationship to the client was of the sort that justified applying the attorney-client privilege. . . . The court saw its conclusion as being a natural extension of the Supreme Court holding in *Upjohn Company v. United States*, 449 US 389, (1981) where the Supreme Court based its holding that 'the communications at issue were privileged on determinations that the communications had been made to Upjohn's counsel by its employees acting at the direction of their corporate superiors' for the purpose of obtaining legal advice, with the understanding that the communications were confidential."

16

In *United States v. Graf*, citation *Graf*, 610 F.3d 1148 (9th Cir. 2010), the Court held that non-employee James L. Graf was covered by the attorney-client privilege, to-wit:

> "We hold that, on the record, as a matter of law, Graf <u>was a 'functional employee'</u> of Employers Mutual. We then adopt and apply the *Bevil* test for determining whether Graf held a personal attorney-client privilege with respect to his communications with the subject attorneys. . . . Graf contends on appeal that he was not a director, officer, or employee of Employers Mutual, but was instead an outside consultant." (Emphasis added).

Similarly, courts have also routinely maintained attorney-client privilege claims in cases involving consultants, accountants, investigators, public relations firms, and non-testifying experts. See *NXIVM Corp v. O'Hare*, 244 FRD 109, (N.D.N.Y. 2007), (investigators and accountant); *H.W. Carter and Sons, Inc. v. William Carter Company*, No. 95 CIV, 1274, 1995, W.L. 301351 at *8 S.D.N.Y. May 16, 1995; (public relations consultants); *US Postal Service v. Phelps Dodge REF Corp*, 852 F. Supp. 156 (E.D.N.Y. 1994) (accountants and non-testifying experts). See also *US v. Kovel*, 296 F.2d 918 (2nd Cir. 1961).

All of the aforesaid legal authority establish the functional equivalent doctrine and use it to expand the common law attorney-client privilege. In the same vein the functional equivalent doctrine covers Dr. McIntyre and brings him under the legal protection of 5 U.S.C. §2302(8) and grants the Court below jurisdiction.

## C. 10 U.S.C. §2409 GRANTS THE DISTRICT COURT JURISDICTION.

Herein the Defendant under a contract or grant with the Department of Defense or the National Aeronautics and Space Administration authorizes a Complainant to bring a de

novo action at law or equity against a contractor, sub-contractor, grantee, sub-grantee, or personal services contractor.

As previously argued above, Dr. McIntyre is the functional equivalent of a whistleblower covered by 10 U.S.C. §2409 and the Court below does have jurisdiction over him.  As noted above in some detail, the functional equivalent doctrine has been previously expanded substantially to expand attorney-client privilege far beyond the common law and that same doctrine brings coverage to Dr. McIntyre under the Defense Contractor Whistleblower Protection Act, 10 U.S.C. §2409.

Dr. McIntyre functions exclusively under a government contractor (Vista Staffing). Dr. McIntyre is a direct third-party beneficiary of the contract between Vista and IHS.  The protections afforded by §2409 in all equity are also applicable to protect Dr. McIntyre.

And under §2409 the Court below has jurisdiction to adjudicate this cause.

### D. 42 U.S.C. §1395 GRANTS THE
### DISTRICT COURT JURISDICTION.

Herein the Defendant argues §1395 does not grant the District Court jurisdiction.

However, the Complaint shows that Dr. McIntyre did plead sufficient factual allegations where federal officers or employees (Dr. Ritchie and Dr. Baker) exercised supervision and control over Dr. McIntyre's practice of medicine and exceeded their authority in overriding his prescriptions and physician orders to patients.

Dr. McIntyre pled about the aforesaid supervising physician's interference with his practice of medicine.  Such interference with Dr. McIntyre's practice of medicine is prohibited by §1395.  And it must be noted that the interference with Dr. McIntyre's

18

professional practice of medicine occurred yet there is no evidence of any contemporaneous clinical entries by any of the supervisors critical of Dr. McIntyre. There are no allegations of any specific misdiagnosis or medically inappropriate treatment protocol violation by Dr. McIntyre or any instance where medication was prescribed without medical need.

The precise purpose of §1395 is to allow the treating physician (here Dr. McIntyre) to gain all patient medical history, symptoms and test results and to prescribe a treatment plan and any supporting prescriptions. Section 1395 recognizes the treating physician is closest to the patient. It recognizes the treating physician is fully informed and in a much better position to treat the patient than a remote supervisor who is only interfering after the fact.

And further Dr. McIntyre pled he did exhaust all administrative remedies by going through the IHS chain of command and to the OIG to Investigator Lauren Hanover with written complaints and emails to include those dated September 16, 2021 and October 13, 2021. The record shows Dr. McIntyre did in fact exhaust all available administrative remedies before undertaking this Complaint seeking judicial relief.

### E. 25 C.F.R. §11.448(b) GRANTS JURISDICTION TO THE COURT BELOW.

Here Defendant argues that this regulation "makes certain conduct in Indian country a misdemeanor." Title 25 C.F.R. §11.448(1) is an additional protection of the Native American population. Dr. McIntyre serves that Native American population. And Dr.

McIntyre as noted above blew the whistle on several instances of IHS personnel acting contrary to protection of the Native American population.

And §11.448(b) does establish public policy on that issue in Indian country. Any IHS personnel's violation of that public policy as pled in the Complaint grants the Court below jurisdiction to adjudge such Agency conduct.

### F. 42 U.S.C. §181.16 GRANTS JURISDICTION TO THE COURT BELOW.

As noted by the Defendant's Brief, §181.16 prohibits discrimination in federally funded or administered health programs on grounds prohibited by other enumerated laws.

The IHS retaliatory discharge of Dr. McIntyre within days after Dr. McIntyre's complaint to the OIG is precisely among the conducted prohibited by Title VI of the Civil Rights Act of 1964, Title 9 of the Education Amendments of 1972, the Age Discrimination Act of 1975, or the Rehabilitation Act of 1973.

Those statutory references all protect Dr. McIntyre. The Complaint filed below by Dr. McIntyre raises IHS and Vista personnel's conduct contrary to the aforesaid statutory protections of the Civil Rights Act, and the Age Discrimination Act and the Rehabilitation Act. The facts pled in the Complaint along with those statutory remedies place this matter under the jurisdiction of the Court below.

### G. 28 U.S.C. §1491(b)(1) GRANTS JURISDICTION TO THE LOWER COURT.

As noted by the Defendant's Brief, this section challenges any bid or proposal for a contract or award of contract in connection with procurement or a proposed procurement.

In the case at bar, the IHS contracted with Vista Staffing Solutions, Inc. As a result of that contract Vista Staffing Solutions, Inc. obtained a federal procurement. Dr. McIntyre's complaint pled violation of a series of statutes or regulations violated by the IHS subsequent actions in that procurement. Those allegations under §1491(b)(1) create lawful jurisdiction of the Court below.

And case law cited in Proposition III above from 2008 and 2009 again demonstrate the jurisdiction of the Court below.

## PROPOSITION V

### *DEFENDANT'S RANK SPECULATION ABOUT MULTIPLE SUITS IS WITHOUT MERIT.*

Defendant's IHS Brief concludes with legal counsel's personal bald speculation about the fate of Dr. McIntyre's case in any forum. And the Defendant's speculation overlooks the fact that Dr. McIntyre did fulfill his burden to establish subject matter jurisdiction in the District Court as noted in *Port City Properties v. Union Pacific Railroad Company*, 518 F.3d 1186 (10th Cir. 2008).

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons and legal authorities set forth above, the Appellant Robert McIntyre, M.D. prays that this Court reverse the Judgment of the honorable Court below and remand this case to the Court below for further proceedings, and for such other and further relief as the Court may grant.

## <u>REQUEST FOR ORAL ARGUMENT</u>

The Appellant requests oral argument in this cause. The facts are lengthy and novel. The legal issues are numerous. Oral argument will focus the Court on the threshold issues of whether IHS ever provided Vista with the factual basis to support the requirement in Paragraph 4 to demonstrate a "reasonable finding" that Dr. McIntyre's performance was unacceptable. And did IHS provide Vista with the Paragraph 4 required "reasons of professional competence or personal conduct" conclusions alleged against Dr. McIntyre. And oral argument will include the weight to accord to Utah law requiring Vista to fulfill a duty of good faith and fair dealing.

Research reveals this is a case of first impression and oral argument will assist the Court to reach a lawful and fully informed decision.

Respectfully submitted,

*Daniel J. Gamino*
DANIEL J. GAMINO, OBA #3227
Daniel J. Gamino & Associates, P.C.
Jamestown Office Park, North Building
3035 NW 63rd Street, Suite 214
Oklahoma City, OK 73116
Telephone:   (405) 840-3741
Facsimile:   (405) 840-3744
Email: danieljgaminopc@gmail.com
*Attorney for Plaintiff, Robert McIntyre, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was on the date below and in the method shown, served on the following:

| | |
|---|---|
| _____ | Mailed with postage prepaid thereon |
| _____ | FAXED |
| _____ | Hand-delivered |
| April 9, 2025 | Emailed |
| April 9, 2025 | E-filed |

Ray A. Ray, OBA #22281
Alicia Sienne Voltmer, Texas Bar No. 00797605
James Peacock, Texas Bar No. 00791419
Norman Wohlgemuth, LLP
401 S. Boston Avenue, Suite 3200
Tulsa, OK 74103
Email: RRay@NWLawOK.com
         Alicia.voltmer@gtlaw.com
         James.peacock@gtlaw.com
Attorneys for Vista Staffing

Jeffrey A. Gallant
Kirby Boudreaux
Patrick Steward
Sarah M. Coffey
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, OK 74119
Email:Jeff.Gallant@usdoj.gov
         CaseView.ECF@usdoj.gov
         Kirby.Boudreaux@usdoj.gov
         Patrick.Steward@hhs.gov
         sarah.m.coffey@usdoj.gov
Attorney for Indian Health Services

*Daniel J. Gamino*
_____
DANIEL J. GAMINO

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains 5914 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportionally spaced typeface using Microsoft Word 11 in font size 13 in Times New Roman.

*Daniel J. Gamino*
DANIEL J. GAMINO
*Attorney for Appellant Crystal Bond*

Dated:  *April 9, 2025*